UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS,

        *Plaintiff*,

           v.

UNITED STATES CUSTOMS AND
BORDER PROTECTION, *et al.*,

        *Defendants*.

Civil Action No. 18-0155 (TNM)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

TABLE OF CONTENTS

I.    CBP CONDUCTED AN ADEQUATE SEARCH ................................................. 4

  A. Plaintiff's First Request and Third Request ............................................... 5

  B. Plaintiff's Second Request ...................................................................... 7

II.   CBP PROPERLY INVOKED FOIA EXEMPTIONS 5, 6, 7(C), AND 7(E) ...................... 8

  A. CBP Properly Withheld Information under FOIA Exemption 5 ......................... 9
    1.   The Deliberative Process Privilege ................................................... 9
    2.   The Attorney-Client Privilege ....................................................... 13
    3.   The Attorney Work Product Privilege ............................................... 14

  B. Law Enforcement Threshold ..................................................................... 14

  C. CBP Properly Withheld Information under FOIA Exemptions 6 and 7(C) ........... 15

  D. CBP Properly Withheld Information under FOIA Exemption 7(E) ................... 18

III.  CBP RELEASED ALL REASONABLY SEGREGABLE INFORMATION ................... 20

TABLE OF AUTHORITIES

*Amadis v. Dep't of State,*
971 F.3d 364 (D.C. Cir. 2020) ........................................................................ 12

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ................................................................................... 3

*Armstrong v. Exec. Off. of the President,*
   97 F.3d 575 (D.C. Cir. 1996) ..................................................................... 20

*Baker & Hostetler LLP v. Dep't of Commerce,*
   473 F.3d 312 (D.C. Cir. 2006) ..................................................................... 5

*Blackwell v. FBI,*
   646 F.3d 37 (D.C. Cir. 2011) ..................................................................... 18

*Bloomberg, L.P. v. SEC,*
   357 F. Supp. 2d 156 (D.D.C. 2004) .............................................................. 10

*Brayton v. Office of U.S. Trade Rep.*,
   641 F.3d 521 (D.C. Cir. 2011) ................................................................ 3

*Canning v. Dep't of Justice*,
   567 F. Supp. 2d 104 (D.D.C. 2008) ...................................................... 20

*Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*,
   40 F.R.D. 318 (D.D.C. 1966) ........................................................... 9-10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................ 3

*Chambers v. Dep't of Interior*,
   568 F.3d 998 (D.C. Cir. 2009) ............................................................ 5

*Clemente v. FBI*,
   867 F.3d 111 (D.C. Cir. 2017) ........................................................ 4, 8

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980)...................................................... 10, 13

*Ctr. for Biological Diversity v. U.S. Army Corps of Engineers*,
   405 F. Supp. 3d 127 (D.D.C. 2019) .................................................... 15

*Defenders of Wildlife v. U.S. Border Patrol*,
   623 F. Supp. 2d 83 (D.D.C. 2009) ...................................................... 3

*Dep't of Air Force v. Rose*,
   425 U.S. 352 (1976) .......................................................................... 15

*Dep't of Def. v. Fed. Labor Relations Auth.*
   ("FLRA"), 510 U.S. 487 (1994) ..................................................... 8, 15

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
   532 U.S. 1 (2001) ............................................................................. 10

*Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
   489 U.S. 749 (1989) ................................................................... 15, 16

*Dep't of Justice v. Tax Analysts*,
   492 U.S. 136 (1989) ............................................................................ 8

*FBI v. Abramson*,
   456 U.S. 615 (1982) .......................................................................... 14

*Gold Anti-Trust Action Comm. v. Bd. of Governors*,
   762 F. Supp. 2d 123 (D.D.C. 2011) ................................................................ 10-11

*Ground Saucer Watch, Inc. v. CIA*,
   692 F.2d 770 (D.C. Cir. 1981) ........................................................................ 4

*Heggestad v. Dep't of Justice*,
   182 F. Supp. 2d 1 (D.D.C. 2000) .................................................................... 10

*In re Sealed Case*,
   121 F.3d 729 (D.C. Cir. 1997) ........................................................................ 10

*In re Sealed Case*,
   737 F.2d 94 (D.C. Cir. 1984) .......................................................................... 13

*Judicial Watch v. Dep't of Justice*,
   432 F.3d 366 (D.C. Cir. 2005) ........................................................................ 14

*Judicial Watch v. Dep't of the Army*,
   466 F. Supp. 2d 112 (D.D.C. 2006) ................................................................ 13

*Judicial Watch, Inc. v. Dep't of Homeland Sec.*,
   841 F. Supp. 2d 142 (D.D.C. 2012) ................................................................ 13

*Keys v. U.S. Dep't of Justice*,
   830 F.2d 337 (D.C. Cir. 1987) ........................................................................ 14

*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009) ........................................................................ 4

*Lewis v. Dep't of Justice*,
   867 F. Supp. 2d 1 (D.D.C. 2011) .................................................................... 12

*Mayer Brown LLP v. IRS*,
   562 F.3d 1190 (D.C. Cir. 2009) ...................................................................... 18, 19

*McCutchen v. Dep't of Health & Human Servs.*,
   30 F.3d 183 (D.C. Cir. 1994) .......................................................................... 8

*McGehee v. CIA*,
   697 F.2d 1095 (D.C. Cir. 1983) ...................................................................... 3-4

*McGehee v. Dep't of Justice*,
   800 F. Supp. 2d 220 (D.D.C. 2011) ................................................................ 17, 19

*McKinley v. FDIC*,
   744 F. Supp. 2d 128 (D.D.C. 2010) ...................................................... 10

*Mead Data Cent., Inc. v. Dep't of Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) ............................................... 12, 13, 20

*Media Research Ctr. v. U.S. Dep't of Justice*,
   818 F. Supp. 2d 131 (D.D.C. 2011) ................................................... 3, 4

*Military Audit Project v. Casey*,
   656 F.2d 724 (D.C. Cir. 1981) ............................................................. 4

*Nat'l Ass'n of Retired Fed. Employees v. Horner*,
   879 F.2d 873 (D.C. Cir. 1989) ........................................................... 17

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) ............................................................................ 9

*Oglesby v. Dep't of Army*,
   920 F.2d 57 (D.C. Cir. 1990) ............................................................... 4

*Petroleum Info. Corp. v. Dep't of Interior*,
   976 F.2d 1429 (D.C. Cir. 1992) ......................................................... 11

*Pratt v. Webster*,
   673 F.2d 408 (D.C. Cir. 1982) ........................................................... 14

*Pub. Citizen Health Rsch. Grp. v. FDA*,
   185 F.3d 898 (D.C. Cir. 1999) ............................................................. 8

*Reed v. NLRB*,
   927 F.2d 1249 (D.C. Cir. 1991) ......................................................... 15

*Am. Immgr. Lawyers Ass'n v. Exec. Off. for Immigr. Review*,
   830 F.3d 667 (D.C. Cir. 2016) ........................................................... 16

*Roth v. Dep't of Justice*,
   642 F.3d 1161 (D.C. Cir. 2011) ......................................................... 16

*SafeCard Servs., Inc. v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) ................................................. 4, 5, 10

*Sussman v. U.S. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007) ......................................................... 20

*Tax Analysts v. IRS,*
　　117 F.3d 607 (D.C. Cir. 1997) ............................................................................. 13

*U.S. Dep't of State v. Ray,*
　　502 U.S. 164 (1991) ............................................................................................. 17

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.,*
　　No. 19-547, 2021 WL 816352 (U.S. Mar. 4, 2021) ............................................. 10

*Washington  v. U.S. Dep't of Labor,*
　　478 F. Supp. 2d 77 (D.D.C. 2007) ......................................................................... 4

*Weisberg v. Dep't of Justice,*
　　745 F.2d 1476 (D.C. Cir. 1984) .............................................................................. 4

*Wolf v. CIA,*
　　473 F.3d 370 (D.C. Cir. 2007) ............................................................................... 8

**Statutes**

5 U.S.C. § 552 ................................................................................... 1, 8, 9, 15, 16, 18

19 U.S.C. § 1509 .............................................................. 1, 2, 5, 6, 7, 8, 9, 11, 12, 13

## INTRODUCTION

Plaintiff, the Reporters Committee for Freedom of the Press, brought this consolidated action seeking to compel Defendants, United States Customs and Border Protection ("CBP") and the United States Department of Homeland Security ("DHS"), to respond to three separate requests for CBP records submitted by Plaintiff pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  As explained herein, Defendants have met their burden under the FOIA and are entitled to judgment as a matter of law.

## STATEMENT OF MATERIAL FACTS

Defendants incorporate as though fully set forth herein the attached Statement of Material Facts As To Which There Is No Genuine Issue ("SOMF").  In support of Defendants' Motion for Summary Judgment and the SOMF, Defendants submit the Fourth Declaration of Patrick Howard, Branch Chief in the FOIA Division at CBP, attached hereto  ("Howard 4th Decl."), and also refer to, and incorporate by reference, Mr. Howard's first declaration submitted on February 4, 2020 ("Howard Decl."), (ECF No. 43-2).

## PROCEDURAL BACKGROUND

On April 17, 2017, Plaintiff submitted a FOIA request through the DHS online FOIA portal seeking disclosure of records from CBP concerning CBP's use of 19 U.S.C. § 1509 summons authority in general, and specifically with regard to the issuance of a particular summons to Twitter (the "First Request").  *See* ECF No. 43-2, Howard Decl. at Ex. B.  On January 24, 2018, Plaintiff filed this lawsuit seeking to compel CBP to produce records in response to the First Request.  *See* ECF No. 1.  On March 26, 2018, Plaintiff submitted a second FOIA request using the DHS online FOIA portal seeking information regarding CBP's processing of the First Request (the "Second Request").  *See* ECF No. 43-2, Howard Decl. at Ex. C.  On May 1, 2018, Plaintiff submitted a third FOIA request using the DHS online FOIA portal seeking records referencing 19 U.S.C.

§ 1509 (the "Third Request").  *See* ECF No. 43-2, Howard Decl. at Ex. D.  On May 31, 2018, Plaintiff filed a second lawsuit seeking to compel CBP to produce records in response to the Second Request and the Third Request.  *See Reporters Comm. for Freedom of the Press v. CBP*, Civ. A. No. No. 18-1289 (TNM) (D.D.C.), ECF No. 1.  On June 8, 2018, Plaintiff filed an unopposed motion to consolidate that action with this case.  *See* ECF No. 15.  On June 12, 2018, the Court issued a Minute Order granting Plaintiff's unopposed motion and consolidating the cases.  From April 30, 2018, until December 4, 2019, CBP released rolling productions of records responsive to Plaintiff's three FOIA requests and the parties filed monthly joint status reports with the Court.  Howard 4th Decl. ¶ 34.  In October of 2019, following a Status Conference with the Court, the parties conferred regarding the scope of the search and the records remaining to be reviewed as potentially responsive, which related to Plaintiff's First Request and Plaintiff's Third Request.  The parties agreed that CBP would filter the remaining records not yet reviewed or released using a date range provided by Plaintiff—March 1, 2017 to June 30, 2017—and that a final production by CBP would contain the responsive records within that date range.  *See* ECF No. 42.  CBP thereafter reviewed the 422 documents (8,596 pages) returned after applying the date range, and partially released 862 pages of responsive records to Plaintiff.  *Id.*  On December 4, 2019, CBP issued its nineteenth and final response to Plaintiff's FOIA requests.  Howard 4th Decl. ¶ 35.  In total, CBP released to Plaintiff 4,151 pages of non-exempt records or non-exempt portions of records.  *Id.*

The parties submitted a first round of summary judgment briefing.  On July 2, 2020, the Court denied Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment.  ECF No. 52.  The Court ordered CBP to submit a new *Vaughn* Index and an accompanying declaration by September 30, 2020.  *Id.*  Following CBP's submission of its new

*Vaughn* Index, the parties agreed that Plaintiff would review the updated *Vaughn* Index and, upon completion of its review, provide CBP with a comprehensive list of records for CBP to revisit and determine if any supplemental releases could be made.  ECF No. 55. On October 21, 2020, Plaintiff provided CBP with a comprehensive list of documents to review.  ECF No. 56.  On January 8, 2021, CBP completed its review; CBP released 19 documents with revised redactions.  ECF No. 57; *see also* Howard 4th Decl. ¶ 36.  The *Vaughn* Index has been updated to reflect the supplemental releases made to Plaintiff.  Howard 4th Decl. ¶ 37.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  It is up to the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  A genuine issue is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Id.*  "[T]he vast majority of FOIA cases can be resolved on summary judgment."  *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Research Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)).

A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations.  *McGehee v. CIA*, 697 F.2d 1095, 1102

(D.C. Cir. 1983).   "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Responsibility & Ethics in Wash.  v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).   "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"   *Media Research Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).   Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"   *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## ARGUMENT

### I.   CBP CONDUCTED AN ADEQUATE SEARCH

CBP conducted an adequate search for records responsive to Plaintiff's FOIA requests.   An agency is entitled to summary judgement in a FOIA case with respect to the adequacy of its search if it shows "'that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce information requested.'"   *Clemente v. FBI*, 867 F.3d 111, 117 (D.C. Cir. 2017) (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).   "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*."   *Weisberg v. Dep't of Just.,* 745 F.2d 1476, 1485 (D.C. Cir. 1984) (citation omitted).   And "[a]n

agency may establish the adequacy of its search by submitting reasonably detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. Dep't of Com.,* 473 F.3d 312, 318 (D.C. Cir. 2006). "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs.*, 926 F.2d at 1200 (citation omitted); *Chambers v. Dep't of Interior,* 568 F.3d 998, 1003 (D.C. Cir. 2009) (recognizing substantial weight traditionally accorded to agency affidavits in FOIA adequacy-of-search cases). As set forth in the first Declaration of Patrick Howard submitted on February 4, 2020, ECF No. 43-2, and incorporated by reference, CBP conducted an adequate search in response to Plaintiff's FOIA requests.

### A.      Plaintiff's First Request and Third Request

With respects to Plaintiff's First Request and Third Request, parts one through three of Plaintiff's First Request sought records that contained certain terms (@ALT_uscis; @ALT_USCIS; "ALT Immigration"; and "ALT_uscis"), and accordingly, CBP's Office of Information Technology ("OIT") searched the emails of every CBP employee for these keywords. *See* ECF No. 43-2, Howard Decl. ¶ 32. That search returned 2,662 responsive pages of records which were reviewed, redacted, and produced to Plaintiff between April 2018 and September 2018. *Id.* Parts four and five of Plaintiff's First Request sought records discussing CBP's use of 19 U.S.C. § 1509 summons authority generally and the use of any authority to unmask the identity of social media users. *See id.* ¶ 33. Upon discussion, Plaintiff agreed that CBP could combine the search for records responsive to Plaintiff's Third Request with the search for records response to parts four and five of Plaintiff's First Request. *Id.*

In July 2018, the Office of Professional Responsibility ("OPR") conducted a nationwide data call to obtain information regarding whether OPR agents had used any other CBP authority

to obtain user information from social media to unmask the identity of anonymous social media users. *See id.* ¶ 34. After reviewing the responses received from the field, CBP determined that no other CBP authority had been used to obtain social media user information for purposes of unmasking identities of anonymous users. *Id.* As a result, CBP searched records related to the use of the 19 U.S.C. § 1509 summons authority in response to Plaintiff's Third Request and parts four and five of Plaintiff's First Request. *Id.*

After consultations with Plaintiff, Plaintiff agreed that CBP would limit its searches in response to these requests to custodians in the following CBP offices: OPR; Office of Chief Counsel; Office of Congressional Affairs; Office of Public Affairs; Office of the Commissioner; and Office of Training and Development. *See id.* ¶ 35. CBP OIT thereafter searched the email inboxes of 35 individual custodians who were either (1) in a leadership position in each of the above-listed office during the relevant timeframe, including Acting Commissioner Kevin K. McAleenan and his Chief of Staff Patrick Flanagan, or (2) were directly involved in updating policies and procedures related to the use of 19 U.S.C. § 1509 summonses during the relevant timeframe. *Id.* CBP OIT designed its email search to pull all emails sent or received, including "cc" and "bcc" emails, by these 35 individuals from January 1, 2016 to August 31, 2018. *Id.* CBP OIT used the following keywords designed to return relevant information: "1509 summons"; "1509 directive"; "1509 training"; "1509 guidance"; and "1509 IOP". *Id.* The search returned a total of 1,980 email documents. *Id.*

CBP's Privacy and Diversity Office ("PDO") and Office of Chief Counsel reviewed the emails OIT pulled to identify emails that contained any of the keywords and to identify whether the documents containing the keywords were relevant to or discussed 19 U.S.C. § 1509 summons authority. *See id.* ¶ 36. While the search terms returned a large number of records, the

overwhelming majority of those records did not relate to 19 U.S.C. § 1509 summonses. *Id.* Between September 28, 2018, and September 30, 2019, CBP reviewed 34,999 pages of records returned by the search terms and partially released 1,604 pages of records responsive to Plaintiff's First Request and Plaintiff's Third Request. *Id.*

In October of 2019, following a Status Conference with the Court, the parties conferred regarding the scope of the search and the records remaining to be reviewed as potentially responsive, which related to Plaintiff's First Request and Plaintiff's Third Request. The parties agreed that CBP would filter the remaining records not yet reviewed or released using a date range provided by Plaintiff—March 1, 2017 to June 30, 2017—and that a final production by CBP would contain the responsive records within that date range. *See* ECF No. 42. CBP thereafter reviewed the 422 documents (8,596 pages) returned after applying the date range, and partially released 862 pages of responsive records to Plaintiff. *See* ECF No. 43-2, Howard Decl. ¶ 37. On December 4, 2019, CBP issued its nineteenth and final response to Plaintiff's FOIA requests. *Id.*

**B.      Plaintiff's Second Request**

Plaintiff's Second Request, submitted on March 26, 2018, sought records related to the processing of Plaintiff's First Request. For this request, CBP searched its FOIAOnline database using the keyword "CBP-2017-04951," *i.e.*, the tracking number CBP assigned to Plaintiff's First Request, to obtain any processing notes related to this FOIA request.[1] *See* ECF No. 43-2, Howard Decl. ¶ 39. In addition, CBP searched the email inbox of the CBP FOIA Information Specialist assigned to Plaintiff's First Request, Ms. Miranda Oyler, for the period of April 17, 2017 to May

---

[1]      While the tracking number of the Plaintiff's First Request subsequently changed from "CBP-2017-04951" to "CBP-OIT-2017-04951," the results returned using "CBP-2017-04951" would be the same as the results returned using "CBP-OIT-2017-04951" because the numbers remained the same. *See* ECF No. 43-2, Howard Decl.at 11 n.1.

7, 2018 (the date of the search), using the keyword "CBP-2017-049451" to obtain email communications related to the processing Plaintiff's First Request. *Id.* As a result of this search, CBP identified 262 pages of responsive records and partially released these records to Plaintiff on August 30, 2018. *Id.*

CBP "'made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce information requested,'" *Clemente,* 867 F.3d at 117 (citation omitted), accounting for the records in its possession that were responsive to Plaintiff's FOIA requests. CBP conducted reasonable searches of all files likely to contain records responsive to Plaintiff's requests, ECF No. 43-2, Howard Decl. ¶ 40, thereby discharging its obligations under FOIA to conduct an adequate search for the records at issue.

## II.   CBP PROPERLY INVOKED FOIA EXEMPTIONS 5, 6, 7(C), AND 7(E)

FOIA does not allow the public unfettered access to government files. *McCutchen v. Dep't of Health & Human Servs.*, 30 F.3d 183, 184 (D.C. Cir. 1994). Although disclosure is the dominant objective of FOIA, there are several exemptions to the statute's disclosure requirements. *Dep't of Def. v. Fed. Labor Relations Auth. ("FLRA")*, 510 U.S. 487, 494 (1994). FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of the Act's nine exemptions. 5 U.S.C. § 552(b); *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 150-51 (1989). To protect materials from disclosure, the agency must show that they come within one of FOIA's exemptions. *Pub. Citizen Health Rsch. Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007).

Plaintiff challenges the withholdings asserted by CBP, which were made pursuant to FOIA Exemptions 5, 6, 7(C), and 7(E).  Each category of withholding is addressed below.  Because CBP only withheld exempt information, Defendants are entitled to summary judgment.

### A.    CBP Properly Withheld Information under FOIA Exemption 5

FOIA Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  This exemption shields documents that would be privileged in the context of civil discovery, including materials protected by the deliberative process privilege, the attorney-client privilege, and the attorney work product doctrine.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).

### 1.    The Deliberative Process Privilege

In this case, CBP invoked Exemption 5 based upon the deliberative process privilege in instances where the relevant records contained drafts of documents or pre-decisional and deliberative communications.  Howard 4th Decl. ¶ 43; Ex. A.  Specifically, the records redacted under this exemption concerned internal agency deliberation about the issuance of the Twitter summons and the use of the 19 U.S.C. § 1509 summons authority, how to respond to the Twitter lawsuit, how to respond to Congressional, Inspector General, and media requests in relation to the Twitter lawsuit, and what changes, if any, to make to existing agency policy and training.  Howard 4th Decl. ¶ 43; Ex. A.  Following internal agency discussion, on December 13, 2018, CBP ultimately issued a comprehensive directive on how and when the agency can use the 19 U.S.C. § 1509 summons.  Howard 4th Decl. ¶43; Ex. A.

Documents exempt from disclosure under Exemption 5 pursuant to the deliberative process privilege include those "'reflecting advisory opinions, recommendations and deliberations

comprising part of a process by which governmental decisions and policies are formulated.'" *Sears*, 421 U.S. at 150 (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)); *see McKinley v. FDIC,* 744 F. Supp. 2d 128, 137-38 (D.D.C. 2010).   As the Supreme Court has explained:

> The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (internal quotation marks and citations omitted).   Examples of documents covered by the deliberative process privilege include recommendations, draft documents, proposals, suggestions, advisory opinions, and other documents, such as email messages, that provide the views of the author, rather than the official policy of the agency, or which reflect the give and take of the policy-making process.  *See Bloomberg, L.P. v. SEC*, 357 F. Supp. 2d 156, 168 (D.D.C. 2004).

To invoke the deliberative process privilege, an agency must show that the exempt document is both pre-decisional and deliberative.  *Access Reports v. Dep't of Just.*, 926 F.2d 1192, 1194 (D.C. Cir. 1991); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980).   "Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position."  *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, --- S.  Ct. ---, 2021 WL 816352, at *4 (U.S. Mar. 4, 2021); *see also In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) ("The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made[.]").

To show that a document is pre-decisional, however, the agency need not identify a specific final agency decision; it is sufficient to establish "'what deliberative process is involved, and the role played by the documents at issue in the course of that process.'" *Heggestad v. Dep't of Just.*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States*, 617 F.2d at 868); *see Gold Anti-Trust Action Comm. v. Bd. of Governors*, 762 F. Supp. 2d 123, 135-36 (D.D.C. 2011) ("[E]ven if an internal discussion does not lead to adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was generated as part of a definable decision-making process.") (citing *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992)).

Here, some of the information withheld by CBP is both pre-decisional and deliberative. CBP withheld agency internal communications pertaining to email communications reflecting internal agency deliberation about the issuance of the Twitter summons and proper use of the 19 U.S.C. § 1509 authority; email communications about how to respond to the Twitter lawsuit; email communications about how to respond to Congressional, Inspector General, and media requests in relation to the Twitter lawsuit; email communications on what changes, if any, to make to existing agency policy and training; drafts of the updated directive on the use of 19 U.S.C. § 1509 authority; and email communications between CBP attorneys and CBP employees about how to process Plaintiff's FOIA requests. Howard 4th Decl. ¶ 45; Ex. A. The communications discussing how to respond to Twitter's refusal to comply with the summons and communications about how to respond to the Twitter lawsuit are both pre-decisional and deliberative because these emails reflect the agency's internal deliberative process before reaching the final decision to withdraw the summons. *Id.* ¶¶ 46-47; Ex. A. The internal communications discussing how to respond to requests for information from the Inspector General, Congress and the media, contain

drafts and preliminary versions of responses not yet approved for release; these communications reflect back and forth discussions about appropriate responses to the requests for information, and therefore are also pre-decisional and deliberative. *Id.* ¶ 48; Ex. A.   Email communications discussing existing agency policy on the use of 19 U.S.C. § 1509 summons and communications about the updated 19 U.S.C. § 1509 summons directive  are pre-decisional and deliberative because these exchanges and drafts contain discussions, suggestions, reflections and opinions of individual CBP employees as opposed to the agency's final decision. *Id.* ¶¶ 49, 51; Ex. A.  The final updated 19 U.S.C. § 1509 summons directive was issued and approved on December 13, 2018.  *Id.* ¶ 43; Ex. A.  Email communications between CBP employees on how to respond to Plaintiff's FOIA requests, including how to redact the records and which FOIA exemptions apply to responsive records, also constitutes pre-decisional and deliberative information. *Id.* ¶ 52; Ex. A.

The harm resulting from the release of these communications would be a chilling effect on open and frank discussions within the agency and amongst its employees; if such discussions were routinely disclosed, employees would not seek guidance or share their views for fear of their communications being published. *Id.* ¶¶ 43, 46-49, 51-52; Ex. A.  "Such chilling of candid advice is exactly what the [deliberative-process] privilege seeks to prevent."   *Amadis v. Dep't of State,* 971 F.3d 364, 371 (D.C. Cir. 2020).  Further, disclosure of drafts pertaining to agency guidance and policy which have not been adopted or finalized could lead to confusion. *Id.* ¶¶ 51; Ex. A.

Based on the above, CBP correctly withheld the above information pursuant to the deliberative process privilege of FOIA Exemption 5. *See e.g. Lewis v. Dep't of Just.,* 867 F. Supp. 2d 1, 16 (D.D.C. 2011).

2. *The Attorney-Client Privilege*

CBP correctly withheld information pursuant to the attorney-client privilege of FOIA Exemption 5.  The attorney-client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977).  The attorney-client privilege is not limited to the context of litigation. *See id.* at 252-53.  Rather, it "also protects communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.'" *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) (quoting *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984)); *see also Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 153–54 (D.D.C. 2012) (discussing attorney-client privilege).  A court may infer confidentiality when the communications suggest that "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests." *Coastal States*, 617 F.2d at 863.

CBP withheld confidential communications between DHS and CBP attorneys, and between CBP attorneys and CBP employees about the Twitter lawsuit and the agency's use of the 19 U.S.C. § 1509 summons authority, including drafts of the 19 U.S.C. § 1509 directive.  Howard 4th Decl. ¶¶ 44, 50, 52; Ex. A.  These emails cover instances where CBP employees are seeking legal advice from CBP attorneys about the scope of 19 U.S.C. § 1509 and the proper interpretation of the statute.  *Id.* ¶ 50; Ex. A.  Some of these emails also cover communications between CBP attorneys and CBP employees seeking advice on how to process Plaintiff's FOIA requests and application of proposed exemptions to the responsive records at issue.  *Id.* ¶ 52; Ex. A.  The information withheld here is the type of information that the attorney-client privilege of FOIA Exemption 5 was intended to protect because the information constitutes "confidential

communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data*, 566 F.2d at 252; *see also Judicial Watch v. Dep't of Army,* 466 F. Supp. 2d 112, 121 (D.D.C. 2006) (Attorney-client privilege "encompasses any opinions given by an attorney to his client based on, and thus reflecting, those facts as well as communications between attorneys that reflect client-supplied information."). Thus, CBP correctly withheld this information pursuant to the attorney-client privilege of FOIA Exemption 5.

### 3.     The Attorney Work Product Privilege

CBP correctly withheld information pursuant to the attorney work-product doctrine and FOIA Exemption 5, which protects documents and other memoranda prepared by an attorney in anticipation of litigation. *See, e.g., Judicial Watch v. Dep't of Just.*, 432 F.3d 366, 369 (D.C. Cir. 2005). Because the work product doctrine does not distinguish between factual and deliberative material, "factual material is itself privileged when it appears within documents that are attorney work product." *Id.* at 371. Thus, "[i]f a document is fully protected as work product, then segregability is not required." *Id.* CBP withheld information pertaining to the Twittter lawsuit that includes CBP attorneys' draft legal memoranda, comments, attorneys' mental impressions and litigation risk assessments. Howard 4th Decl. ¶¶ 44, 50; Ex. A. This type of information falls squarely within the protection of the attorney work-product privilege.

### B.     Law Enforcement Threshold

For any part of FOIA Exemption 7 to apply, an agency must first demonstrate that the records it withheld were compiled for law-enforcement purposes. *See FBI v. Abramson*, 456 U.S. 615, 622 (1982). Courts assume that a "criminal law enforcement agency[s']" records were for law enforcement purposes because government agencies "typically go about their intended business," and courts apply a "more deferential attitude toward [their] claims of 'law enforcement

14

purpose.'"  *Pratt v. Webster*, 673 F.2d 408, 418–19 (D.C. Cir. 1982).  In light of that deference,

the D.C. Circuit has opined that a law-enforcement agency need only show that the nexus between

the activity in question and its law-enforcement duties "must be based on information sufficient to

support at least 'a colorable claim' of its rationality."  *Keys v. Dep't of Just.*, 830 F.2d 337, 340

(D.C. Cir. 1987) (quoting *Pratt*, 673 F.2d at 421).  CBP is indisputably a law enforcement agency

and as such is entitled to deference in its determination that the records at issue were compiled for

a law enforcement purpose.  *See* Howard 4th Decl. ¶ 10; *Ctr. for Biological Diversity v. U.S. Army

Corps of Eng'rs,* 405 F. Supp. 3d 127, 148 (D.D.C. 2019) ("Because CBP is an enforcement

agency, it is entitled to deference in its determination that the records were compiled for a law

enforcement purpose.").

### C.    CBP Properly Withheld Information under FOIA Exemptions 6 and 7(C)

Throughout the documents at issue, CBP disclosed the names of DHS and CBP senior

leadership, however it withheld, pursuant to FOIA Exemptions 6 and 7(C), the names of its non-

public facing employees, including the names of law enforcement officers, as well as email

addresses and phone numbers.  Howard Decl. ¶¶ 53-54.

FOIA Exemption 6 protects from disclosure "personnel and medical files and similar files

the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5

U.S.C. § 552(b)(6).  The Supreme Court has adopted a broad construction of the privacy interests

protected by Exemption 6, emphasizing that "privacy encompass[es] the individual's control of

information concerning his or her person." *Dep't of Just. v. Reporters Comm. for Freedom of the

Press*, 489 U.S. 749, 764 n.16 (1989) (citation omitted).  Exemption 6 requires an agency to

balance the individual's right to privacy against the public's interest in disclosure.  *Dep't of Air

Force v. Rose*, 425 U.S. 352, 372 (1976).  An agency must determine whether disclosure of

information threatens a protectable privacy interest and if so, the agency must weigh that privacy interest against the public interest in disclosure, if any.  *See Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991).  The "only relevant public interest . . . to be weighed in this balance is the extent to which disclosure would serve the core purpose of FOIA, which is contribut[ing] significantly to the public understanding of the operations or activities of the government."  *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994).

Likewise, FOIA Exemption 7(C) protects "records or information compiled for law enforcement purposes" when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  "Exemption 7(C) … is 'somewhat broader' than Exemption 6, which requires proof of a 'clearly unwarranted invasion of personal privacy.'"  *Roth v. Dep't of Just.,* 642 F.3d 1161, 1173 (D.C. Cir. 2011) (quoting *Reporters Comm.*, 489 U.S. at 756) Where the information in question was compiled for law enforcement purposes, courts "have no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Id.*  However, under both Exemptions 6 and 7(C), the agency must engage in a balancing test to determine whether the public interest in disclosure is outweighed by a significant privacy interest in non-disclosure.  *See Am. Immigr. Lawyers Ass'n v. Exec. Off. for Immigr. Review,* 830 F.3d 667, 673-74 (D.C. Cir. 2016).

In this case, CBP applied Exemptions 6 and 7(C) to personally identifiable information of non-public facing CBP employees, including names, phone numbers, email addresses, and work addresses.  *See* Howard 4th Decl. ¶¶ 53-54.  CBP did not, however, apply these exemptions as a categorical matter to all such information; for example, CBP released the names of senior officials whose identities are widely known among the public.  *Id.*  The identification of non-public facing

CBP employees in association with the performance of duties in an operational context risks the unwarranted attribution and attention to the employee beyond the confines of their job and into their personal life, and disclosing the identities of specific individuals would not meaningfully shed light on how the government performs its duties.  *Id.* ¶¶ 55-56.  CBP employees have a heightened privacy interest in that they have been subject to harassment, discrimination, and received threats of physical harm solely because of their employment at CBP.  *Id.* ¶ 56.  Disclosing identifying information of non-public facing CBP employees unnecessarily risks exposing these individuals to such harms.  *Id.*  For these reasons, the Office of Personnel Management designated CBP a "Security Agency" exempting all CBP employees, not just front-line law enforcement, from OPM's salary information disclosure policy. *Id.*

The balancing analysis of the CBP employees' privacy interest in the non-disclosure of their identifying information against the public interest, favors withholding this information.   *See, e.g., McGehee v. Dep't of Just.,* 800 F. Supp. 2d 220, 234 (D.D.C. 2011) ("[T]he relevant question is not whether the public would like to know the names of FBI agents and victims involved, but whether knowing those names would shed light on the FBI's performance of its statutory duties."). Here, the actual 1509 summons at issue (and the name of the CBP agent who signed it) has been released without redaction.  *See, e.g.,* Ex. A, *Vaughn* Index, CBP FOIA 000029-000032. Furthermore, the circumstances surrounding the Twitter summons are the subject of the publicly available DHS OIG report. *See Management Alert – CBP's Use of Examination and Summons Authority Under 19 U.S.C. § 1509,* OIG-18-18, November 16, 2017, available at: https://www.oig.dhs.gov/sites/default/files/assets/Mga/2017/oig-18-18-nov17.pdf.   Thus, the disclosure of the personal identifying information of these non-public facing CBP employees would not shed additional light on CBP's operations.  Against this backdrop, there is no public

interest in the personally identifying information of non-public facing CBP employees.  *Cf. U.S. Dep't of State v. Ray,* 502 U.S. 164, 178 (1991) ("The unredacted portions of the documents that have already been released . . . inform the reader about the State Department's performance of its duty . . . The addition of the redacted identifying information would not shed any additional light on the Government's conduct its obligation.").  Under such circumstances, "something, even a modest privacy interest, outweighs nothing every time."  *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).  Accordingly, CBP correctly applied FOIA Exemptions 6 and 7(C) to withhold the names, email addresses and phone numbers of non-public facing employees.

### D.     CBP Properly Withheld Information under FOIA Exemption 7(E)

 FOIA Exemption 7(E) permits withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E); *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting the "relatively low bar for the agency to justify withholding" information under Exemption 7(E)).

In this Circuit, "'the exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.'"  *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).  In fact, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding:

'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Id.* (quoting *Mayer Brown*, 562 F.3d at 1194) (internal quotation marks and alterations omitted).

CBP invoked Exemption (7)(E) to withhold law enforcement techniques and procedures used by CBP to investigate unauthorized disclosure of information and cybersecurity threat; law enforcement techniques and procedures used by CBP to conduct internal investigations; agency records reflecting the use or non-use of particular administrative summons authority; and internal agency codes, email addresses of group list serves, and CBP URL addresses. Howard 4th Decl. ¶ 58; Ex. A. With respect to records related to CBP's investigative techniques, the records redacted under the exemption involved the law enforcement techniques and procedures CBP used to investigate whether a series of allegedly internal emails disclosed by a certain Twitter account were the result of misconduct by a CBP employee or a compromise in the security of CBP systems. *Id.* ¶ 59; Ex. A. If this non-public information on investigative techniques were to be disclosed, this information could be used to develop and employ countermeasures to diminish the effectiveness of CBP's cybersecurity and counterintelligence efforts. *Id.*

Likewise, with respect to CBP's investigative techniques for internal investigations would allow bad actors to avoid detection and thwart CBP's effort. *Id.* ¶ 60; Ex. A. Also redacted under this exemption were records reflecting the use or non-use of particular summons authority by all CBP law enforcement components in specific investigations as well as additional sensitive information related to those investigations. *Id.* ¶ 62; Ex. A. The disclosure of this type of information would inform individuals on the types of activities that trigger a full investigation and CBP's investigative techniques, which could cause individuals to adjust their behavior

accordingly.  *Id.*  Disclosure of such information could reasonably be expected to impede CBP's

effectiveness and aid in circumvention of the law.  *Id.  McGehee v Dep't of Just.,* 800 F. Supp. 2d

220, 236-37 (D.D.C. 2011) (finding that Exemption 7(E) does not require that techniques be

unknown to public where release of non-public details of such techniques would allow them to be

circumvented).

Finally, CBP withheld agency codes, email addresses of group list, and CBP URL

addresses because disclosure of this information could compromise the integrity of CBP's

enforcement mechanism and expose CBP's process to vulnerabilities.  *Id.* ¶ 63.  As CBP explains,

"releasing this type of information could, among other things, enable bad actors to exploit CBP's

cybersecurity infrastructure, gain unauthorized access to view, manipulate or interfere with CBP

data and websites, disrupt official business practices, and subject employees to harassing emails."

*Id.*  Thus, CBP correctly withheld this information pursuant to FOIA Exemption 7(E).

## III.   CBP RELEASED ALL REASONABLY SEGREGABLE INFORMATION

Under FOIA, if a record contains information exempt from disclosure, any "reasonably

segregable," non-exempt information must be disclosed after redaction of the exempt information.

Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with

exempt portions."  *Mead Data*, 566 F.2d at 260.  To establish that all reasonably segregable, non-

exempt information has been disclosed, an agency need only show "with 'reasonable specificity'"

that the information it has withheld cannot be further segregated.  *Armstrong v. Exec. Off. of the

President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104,

110 (D.D.C. 2008).  "Agencies are entitled to a presumption that they complied with the obligation

to disclose reasonably segregable material," which must be overcome by some "quantum of

evidence" by the requester.  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

CBP has met its burden of establishing that all reasonably segregable non-exempt information has been disclosed.  With respect to the documents at issue, CBP analysts and attorneys reviewed each release of records line by line to confirm that any segregable, non-exempt information was released.  Howard 4th Decl. ¶ 64.  As a result of this review, CBP determined that all reasonably segregable portions of the relevant records were released to Plaintiff.  *Id.*  Furthermore, the fact that CBP provided supplemental releases of information where possible, including the release of additional non- exempt information on September 30, 2020, ECF No. 54-3, and on January 8, 2021, Howard 4th Decl. ¶ 36, is further evidence of CBP's in-depth segregability review.

*   *   *

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants'

Motion for Summary Judgment with respect to each of Plaintiff's claims.

Dated: March 19, 2021                                    Respectfully submitted,

                                                        CHANNING D. PHILLIPS
                                                        D.C. Bar #415793
                                                        Acting United States Attorney

                                                        BRIAN P. HUDAK
                                                        Acting Chief, Civil Division

                                                        By:  /s/ *Kathleene Molen*
                                                        KATHLEENE MOLEN
                                                        VA Bar #68460
                                                        Assistant United States Attorney
                                                        555 4th Street, N.W.
                                                        Washington, District of Columbia 20530
                                                        (202) 803-1572
                                                        Kathleene.Molen@usdoj.gov