**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES CUSTOMS AND BORDER PROTECTION**<br><br>and<br><br>**UNITED STATES DEPARTMENT OF HOMELAND SECURITY**<br><br>Defendants. | Civil Action No. 18-cv-0155 (TNM) |

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Katie Townsend
Jennifer A. Nelson
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
Email: ktownsend@rcfp.org
Email: jnelson@rcfp.org

*Counsel for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

INTRODUCTION AND SUMMARY OF ARGUMENT ..... 1

BACKGROUND ..... 3

LEGAL STANDARDS ..... 9

ARGUMENT ..... 11

- I. Defendants have improperly withheld records pursuant to the deliberative process privilege under Exemption 5. ..... 11
  - A. The government-misconduct exception bars Defendants from withholding records related to the issuance of the Twitter summons and its improper use of Section 1509 summons authority. ..... 12
  - B. Defendants have failed to show that withheld material is predecisional or deliberative. ..... 14
  - C. Defendants' deliberative process withholdings fail to comply with FOIA's foreseeable harm provision. ..... 18
- II. Defendants have improperly withheld records pursuant to the attorney-client and attorney work product privileges under Exemption 5. ..... 22
- III. Defendants have improperly withheld records under Exemptions 6 and 7(C). ..... 27
- IV. Defendants have improperly withheld records under Exemption 7(E). ..... 32

CONCLUSION ..... 37

## TABLE OF AUTHORITIES

### CASES


*Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 154 (D.D.C. 1999) ............................... 13
*Am. Immigration Council v. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206 (D.D.C. 2012).. 22, 23
*Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504 (D.C. Cir. 2011) ........................ 15
*Arthur Andersen & Co. v. IRS*, 679 F.2d 254 (D.C.Cir.1982)...................................................... 17
*Billington v. Dep't of Justice*, 233 F.3d 581 (D.C. Cir. 2000)...................................................... 10
*Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37 (D.C. Cir. 2011) ............................ 32, 35
*Campbell v. Dep't of Justice*, 164 F.3d 20 (D.C. Cir. 1998) .......................................... 11, 27, 36
*Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*,
746 F.3d 1082 (D.C. Cir. 2014)........................................................................... 31, 32, 34
*Ctr. for Investigative Reporting v. U.S. Customs and Border Protection*,
436 F. Supp. 3d 90 (D.D.C. 2019)......................................................................... 18, 19, 20
*Cuban v. Sec. and Exch. Comm'n*, 744 F. Supp. 2d 60 (D.D.C. 2010).................................. 22, 24
*Defs. of Wildlife v. U.S. Border Patrol*, 623 F.Supp.2d 83 (D.D.C. 2009).................................. 11
*Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124 (D.C.Cir.1987)............................. 23
*Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749 (1989)................ 9, 28
*Dep't of Justice v. Tax Analysts*, 492 U.S. 136 (1989) ................................................................ 10
*Elec. Frontier Found. v. Dep't of Justice*, 826 F. Supp. 2d 157 (D.D.C. 2011).......................... 17
*Ellis v. Dep't of Justice*, 110 F. Supp. 3d 99 (D.D.C. 2015),
*aff'd*, No. 15-5198, 2016 WL 3544816 (D.C. Cir. June 13, 2016) ..................................... 23, 24
*Enviro Tech Inter., Inc. v. EPA*, 371 F.3d 370 (7th Cir. 2004).................................................... 13
*Fed. Open Mkt. Comm. of the Fed. Reserve Sys. v. Merrill*, 443 U.S. 340 (1979)...................... 26
*Fisher v. United States*, 425 U.S. 391 (1976) .............................................................................. 22
*Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
243 F. Supp. 3d 155 (D.D.C. 2017)........................................................................ 15, 18, 21
*Hayden v. NSA/Cent. Sec. Serv.*, 608 F.2d 1381 (D.C. Cir. 1979) .............................................. 10
*Heffernan v. Azar*, 317 F. Supp. 3d 94 (D.D.C. 2018) ................................................................ 21
*In re Grand Jury*, 475 F.3d 1299 (D.C. Cir. 2007)....................................................................... 22
*In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997)................................................................ 12, 15
*In re Sealed Case*, 146 F.3d 881 (D.C.Cir.1998).......................................................................... 23
*Jaffe v. Cent. Intelligence Agency*, 573 F. Supp. 377 (D.D.C. 1983) ................................... 32, 36
*Judicial Watch v. Dep't of Justice*, 2019 WL 4644029 (D.D.C. Sept. 24, 2019).................. 18, 19
*Judicial Watch v. Dep't of Justice*, 2020 WL 5798442 (D.D.C. Sept. 29, 2020)........................ 37
*Judicial Watch, Inc. v. Dep't of Commerce*, 375 F. Supp. 93 (D.D.C. 2019) ........... 19, 20, 27, 37
*Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108 (D.C. Cir. 2004).................................. 27
*Judicial Watch, Inc. v. Dep't of State*, 235 F. Supp. 3d 310 (D.D.C. 2017)............................... 13
*Judicial Watch, Inc. v. FDA*, 449 F.3d 141 (D.C. Cir. 2006) ........................................... 14, 28
*Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252 (D.D.C. 2004)..................... 17, 25
*Machado Amadis v. Department of State*, 971 F.3d 364 (D.C. Cir. 2020)............................ 19, 20
*Mayer Brown LLP v. Internal Revenue Serv.*, 562 F.3d 1190 (D.C. Cir. 2009).......................... 35
*Morley v. Cent. Intelligence Agency*, 508 F.3d 1108 (D.C. Cir. 2007) ....................................... 10
*Multi Ag Media LLC v. USDA*, 515 F.3d 1224 (D.C. Cir. 2008)................................................. 27
*Muttitt v. Dep't of State*, 926 F. Supp. 2d 284 (D.D.C. 2013) ..................................................... 22
*Myrick v. Johnson*, 199 F. Supp. 3d 120 (D.D.C. 2016)............................................................. 36

*N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) ........ 16
*Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26 (D.C. Cir. 2002) ........ 27
*Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873 (D.C. Cir. 1989) ........ 27, 28
*Nat'l Day Laborer Org. Network v. U.S. Immigration and Customs Enf't Agency*, 811 F. Supp. 2d 713 (S.D.N.Y. 2011) ........ 14
*Nat'l Sec. Archive v. Fed. Bureau of Investigation*, 759 F. Supp. 872 (D.D.C. 1991) ........ 36
*Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1428 (D.C. Cir. 1992) ........ 15
*PHE, Inc. v. Dep't of Justice*, 983 F.2d 248 (D.C. Cir. 1993) ........ 35
*Rosenberg v. Dep't of Def.*, 342 F. Supp. 3d 62 (D.D.C. 2018) ........ 10, 18, 19
*Senate of the Com. of. P.R. on Behalf of Judiciary Comm. v. Dep't of Justice*, 823 F.2d 574 (D.C. Cir. 1987) ........ 15
*Shapiro v. Dep't of Justice*, 153 F. Supp. 3d 253 (D.D.C. 2016) ........ 23, 24
*Sims v. Cent. Intelligence Agency*, 642 F.2d 562 (D.C. Cir. 1980) ........ 28
*State of Maine v. U.S. Dep't of Interior*, 298 F.3d 60 (1st Cir. 2002) ........ 25
*Stern v. Fed. Bureau of Investigation*, 737 F.2d 84 (D.C. Cir. 1984) ........ 28
*Tax Reform Research Grp. v. Internal Revenue Serv.*, 419 F. Supp. 415 (D.D.C. 1976) ........ 13
*Truitt v. Dep't of State*, 897 F.2d 540 (D.C. Cir. 1990) ........ 11
*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777 (2021) ........ 11, 14
*United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010) ........ 23
*Vaughn v. Rosen*, 523 F.3d 1136 (1975) ........ 15
*Weisberg v. Dep't of Justice*, 705 F.2d 1344 (D.C. Cir. 1983) ........ 11
*Wilderness Soc. v. Dep't of Interior*, 344 F. Supp. 2d 1 (D.D.C. 2004) ........ 18

**OTHER AUTHORITIES**

114 Cong. Rec. S1496 (Mar. 15, 2016) ........ 19
H.R. Rep. No. 114-391 ........ 26
S. Rep. No. 1114-4 ........ 10, 21

Pursuant to Fed. R. Civ. P. 56 and Local Rules 7(a), 7(b), & 7(h), the Reporters Committee for Freedom of the Press ("Reporters Committee" or "Plaintiff"), by and through undersigned counsel, hereby submits this Memorandum of Law in opposition to the Motion for Summary Judgment filed by the United States Department of Homeland Security ("DHS") and United States Customs and Border Protection ("CBP") ("Defendants") and in support of Plaintiff's Cross-Motion for Summary Judgment. For the reasons herein, the Court should deny Defendants' motion for summary judgment and grant summary judgment in Plaintiff's favor.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This consolidated case combines two separate actions concerning three FOIA requests submitted by the Reporters Committee under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA" or the "Act") for records related to a matter of significant public interest: CBP's attempted use of its administrative summons authority under 19 U.S.C. § 1509 to attempt to compel a social media company to unmask the individual(s) behind an anonymous account publishing First Amendment-protected commentary critical of the government—conduct by CBP that DHS's own Office of Inspector General ("OIG") later characterized as "improper[.]"

In April 2017, Twitter, Inc. ("Twitter") filed a lawsuit against DHS and CBP challenging, on First Amendment grounds, a summons issued by CBP that sought to force the social media platform to reveal the identities of author(s) of an "alternative agency" account critical of the United States Citizenship and Immigration Services ("USCIS"), a component of DHS. Thereafter, Plaintiff submitted FOIA requests seeking records relating to that incident and, after CBP failed to produce any records responsive to Plaintiff's FOIA requests, filed suit.

In litigation, Defendants withheld in full many of the records responsive to Plaintiff's FOIA requests, and heavily redacted those it did release. As demonstrated in the representative

samples attached as exhibits to the Second Declaration of Katie Townsend ("Second Townsend Declaration" or "Second Townsend Decl."), Defendants' redactions are so extensive that only a small number of the redacted records are readable. The sheer extent of Defendants' withholdings in the context of the FOIA requests at issue—which concern what the OIG characterized as an improper use of CBP's administrative summons authority—is, alone, troubling. And, as set forth below, Defendants' abject failure to demonstrate the propriety of its withholdings forecloses summary judgment in its favor.

After an initial round of summary judgment briefing in 2020, ECF Nos. 43, 45, 49–51, the Court held that Defendants' *Vaughn* Index and declarations were "plainly inadequate" and ordered Defendants to submit a new *Vaughn* Index and agency declaration on or before September 30, 2020. ECF No. 52. The Court also ordered the parties to consider mediation. *Id.* at 3. After efforts to mediate proved unsuccessful, Defendants again moved for summary judgment, asserting that the Fourth Declaration of CBP Branch Chief Patrick A. Howard, ECF No. 59-3 (the "Fourth Howard Declaration" or "Fourth Howard Decl."), as well as the agency's *Vaughn* Index, ECF No. 59-4, establish that Defendants properly withheld more than 1,600 pages in their entirety, as well as portions of more than 2,000 pages, of the records it processed in response to Plaintiff's FOIA requests. As detailed herein, however, Defendants' evidentiary showing and their legal arguments are facially inadequate and cannot support summary judgment in their favor.

In particular, Defendants have: (1) improperly withheld material that is not predecisional, not deliberative, or is neither, pursuant to the deliberative process privilege of Exemption 5; (2) failed to meet their burden to demonstrate that material has been properly withheld pursuant to the attorney-client or attorney work product privilege of Exemption 5; (3)

improperly withheld, categorically, the names of nearly all CBP personnel pursuant to Exemptions 6 and 7(C); and (4) improperly withheld information about, *inter alia*, CBP's internal investigations and use of its administrative summons authority pursuant to Exemption 7(E). Further, Defendants have failed to demonstrate compliance with FOIA's "foreseeable harm" provision—which was added to the Act in 2016 by Congress to curtail agencies' ability to withhold information pursuant to FOIA's discretionary exemptions.

For these reasons, the Court should deny Defendants' motion for summary judgment and grant summary judgment in Plaintiff's favor.

## BACKGROUND

### A. CBP's administrative summons to Twitter and subsequent DHS investigation.

Following the inauguration of President Donald J. Trump, a number of so-called "alternative agency" accounts appeared on Twitter. Second Townsend Decl. ¶ 7, Ex. F. These accounts, controlled by users who often purported to be current or former employees of federal agencies, provided commentary in opposition to the policies of the Trump Administration. One of these "alternative agency" accounts, @ALT_uscis, amassed more than 190,000 followers and has published more than 96,000 tweets since its creation in January 2017. *See* @ALT_uscis, Twitter, https://twitter.com/alt_uscis (~192,700 followers as of April 20, 2021). The commentary published by @ALT_uscis criticized government immigration policies with which the user(s) disagree, including President Trump's immigration Executive Order and his efforts to build a wall along the U.S.-Mexico border. *Id*.

In some instances, the individual(s) behind "alternative agency" accounts speak anonymously to ensure that they may speak freely without fear of the negative consequences that could follow if they were identified as the source of critical commentary concerning those

governmental agencies. Second Townsend Decl. ¶ 6, Ex. E. Like many social media platforms, Twitter permits its users to choose whether to identify themselves publicly; users who wishes to remain anonymous, such as the user(s) behind @ALT_uscis, may select a pseudonymous username that does not disclose their identity. *Id*.

On April 6, 2017, Twitter filed suit against CBP and DHS in the U.S. District Court for the Northern District of California, challenging a summons that CBP issued to Twitter demanding it provide information to identify the user or users behind @ALT_uscis. *See* Compl., *Twitter, Inc. v. U.S. Dep't of Homeland Security, et al.*, No. 3:17-cv-01916 (N.D. Cal. Apr. 6, 2017). The summons, attached as an exhibit to Twitter's complaint, cited an administrative provision of the Tariff Act of 1930 which authorizes the agency to compel production of a narrow class of records related to the importation of merchandise. *See* 19 U.S.C. § 1509. CBP promptly withdrew the summons, and Twitter voluntarily dismissed its claims without prejudice. *See* Notice of Voluntary Dismissal, *Twitter, Inc. v. U.S. Dep't of Homeland Security, et al.*, No. 3:17-cv-01916 (N.D. Cal. Apr. 7, 2017).

DHS's Office of Inspector General ("OIG") subsequently investigated CBP's issuance of the Section 1509 summons to Twitter, and on November 16, 2017 released a report titled "Management Alert—CBP's Use of Examination and Summons Authority Under 19 U.S.C. § 1509" ("OIG Report"). Plaintiff's Combined Statement of Material Facts as to which there is no Genuine Issue and Response to Defendants' Statement of Material Facts (hereinafter "SMF") at ¶ 38; *see also* Second Townsend Decl. ¶ 8, Ex. G. The OIG Report addressed the summons issued to Twitter, determining that "lack of clear guidance on the proper use of Section 1509 Summons has resulted in inconsistent—and in some cases, improper—use of such summonses." Second Townsend Decl. ¶ 8, Ex. G at 2. The OIG Report contained three directives to CBP to

ensure that its personnel would be subsequently informed and trained on the appropriate exercise of CBP's examination and summons authority under 19 U.S.C. § 1509. *Id.* at 6.

## B. Plaintiff's First FOIA Request, Civil Action No. 18-cv-0155, and the Second FOIA Request.

On April 17, 2017, Plaintiff submitted its First FOIA Request to DHS seeking:

1) All records, including but not limited to opinions, memoranda, directives, guidelines, checklists, or criteria, from January 1, 2017, that mention one or more of the following terms:

   a. @ALT_uscis;
   b. @ALT_USCIS;
   c. "ALT Immigration"; or
   d. "ALT_uscis";

2) All e-mail communications to or from Special Agent Adam Hoffman from January 1, 2017, including communications on which Mr. Hoffman was carbon copied ("CC'd") or blind carbon copied ("BCC'd"), that mention one or more of the following terms:

   a. @ALT_uscis;
   b. @ALT_USCIS;
   c. "ALT Immigration"; or
   d. "ALT_uscis"; or
   e. "Twitter account";

3) All e-mail communications to or from Special Agent in Charge Stephen P. Caruso from January 1, 2017, including communications on which Mr. Caruso was carbon copied ("CC'd") or blind carbon copied ("BCC'd"), that mention one or more of the following terms:

   a. @ALT_uscis;
   b. @ALT_USCIS;
   c. "ALT Immigration"; or
   d. "ALT_uscis"; or
   e. "Twitter account";

4) All records, including but not limited to opinions, memoranda, directives, guidelines, checklists, or criteria, discussing applicable authority (including but not limited to 19 U.S.C. § 1509), from January 1, 2016, used by CBP to compel the production of records to unmask the identity of persons using databases, social media programs, and other software; and

> 5) All records, including but not limited to opinions, memoranda, directives, guidelines, checklists, or criteria, discussing applicable authority (including but not limited to 19 U.S.C. § 1509), from January 1, 2016, discussing applicable authority for a recipient of a summons notice issued by CBP pursuant to 19 U.S.C. § 1509 to object to compliance with such summons.

SMF ¶ 40.

On June 6, 2017, Plaintiff submitted an administrative appeal challenging Defendants' failure to respond within FOIA's statutory deadlines. SMF ¶ 41. Concluding that no adverse determination had been made, the appeals office closed Plaintiff's administrative appeal on July 5, 2017. *Id.* Plaintiff filed the above-captioned lawsuit on January 24, 2018, after Defendants failed to produce any records in response to the First FOIA Request. *See* Compl., ECF No. 1.

On March 26, 2018, Plaintiff submitted the Second FOIA Request to DHS seeking the following records regarding how CBP had processed the First FOIA Request:

> 1) All processing notes regarding FOIA request number CBP-2017-049451. This FOIA request was submitted by RCFP to CBP on April 17, 2017;
>
> 2) All processing notes regarding FOIA request number CBP-OIT-2017-049451. This FOIA request was submitted by RCFP to CBP on April 17, 2017;
>
> 3) All records of communications within CBP or between CBP and DHS, including but not limited to emails, memoranda, and directives, regarding FOIA request number CBP-2017-049451;
>
> 4) All records of communications within CBP or between CBP and DHS headquarters or other DHS components, including but not limited to emails, memoranda, and directives, regarding FOIA request number CBP-OIT-2017-049451;
>
> 5) All e-mail communications to or from Miranda Oyler, Government Information Specialist, Customs and Border Protection, FOIA Division, from April 17, 2017 to present, including communications on which Ms. Oyler was carbon copied ("CC'd") or blind carbon copied ("BCC'd"), regarding FOIA request number CBP-2017-049451;
>
> 6) All e-mail communications to or from Miranda Oyler, Government Information Specialist, Customs and Border Protection, FOIA Division, from April 17, 2017 to present, including communications on which Ms. Oyler was

> carbon copied ("CC'd") or blind carbon copied ("BCC'd"), regarding FOIA request number CBP-OIT-2017-049451;
>
> 7) Any and all emails sent by CBP's Office of Information and Technology ("OIT") to CBP employees asking them to search for records in response to FOIA request number CBP-2017-049451;
>
> 8) Any and all emails sent by OIT to CBP employees asking them to search for records in response to FOIA request number CBP-OIT-2017-049451; and
>
> 9) All processing notes regarding administrative appeal number CBP-AP-2017-063198. This FOIA appeal was submitted by RCFP to CBP on June 6, 2017.

SMF ¶ 43.

**C. Plaintiff's Third FOIA Request, Civil Action No. 18-cv-01289, and the consolidation of actions.**

On March 22, 2018, the Court held a status conference at which it ordered CBP to review at least 500 pages of potentially responsive records per month and produce responsive records to the Plaintiff by the end of every month; the Court also instructed the parties to confer regarding the scope of Categories 4 and 5 of the First FOIA Request. Minute Order, Mar. 22, 2018.

During meet and confer discussions, Defendants' counsel represented that CBP would not conduct a search for records responsive to Categories 4 and 5 of Plaintiff's First FOIA Request based on the wording of the request because, as written, CBP's search would "yield no results" for responsive records. SMF ¶ 44. Defendants' counsel refused to engage in discussions to identify mutually agreeable search terms and/or search parameters that would narrow the scope of CBP's search for records in response to Categories 4 and 5 of Plaintiff's First FOIA Request. *Id.*; *see also* Second Townsend Decl. ¶ 13.

In light of Defendants' position, on May 1, 2018 Plaintiff submitted a Third FOIA Request to DHS to obtain the records sought by subsections (4) and (5) of its First FOIA

Request, *see* Unopposed Mot. to Consolidate Cases, ECF No. 15, at 5. The Third FOIA Request sought:

> All records, including but not limited to communications, opinions, memoranda, directives, guidelines, checklists, or criteria, containing or referencing any of the following terms since January 1, 2016:
>
> (1) "19 U.S.C. § 1509";
> (2) "19 USC § 1509";
> (3) "Section 1509";
> (4) "§1509";
> (5) "§ 1509";
> (6) "19 USC 1509"; or
> (7) "19 U.S.C. 1509".

SMF ¶ 45.

On May 31, 2018, Plaintiff filed a second lawsuit after Defendants failed to produce any records in response to the Second or Third FOIA Requests. SMF ¶ 46; *see also* Compl., *Reporters Committee for Freedom of the Press v. U.S. Dep't of Homeland Security et al.*, ECF No. 1–4, No. 18-cv-01289 (D.D.C. May 31, 2018).

Plaintiff filed an unopposed motion to consolidate that case—Civil Action No. 18-cv-1289—with the above-captioned case on June 8, 2018. *See* SMF ¶ 47. The Court issued a Minute Order on June 12, 2018 granting that unopposed motion. *Id.*

**D. Defendants' processing of records in response to Plaintiff's FOIA Requests.**

Between April 30, 2018 and December 4, 2019, CBP made nineteen productions of records to Plaintiff in response to its three FOIA requests. *See* Joint Status Report, ECF No. 12; Joint Status Report, ECF No. 42. In August 2018, the parties agreed that, for purposes of CBP's

search for responsive records, the agency would combine Categories 4 and 5 of the First FOIA Request with the Third FOIA Request and limit its search to ten offices within CBP.[1] SMF ¶ 15.

In total, CBP identified 4,147 pages of records responsive to Plaintiff's FOIA Requests. SMF ¶ 48. Of those 4,147 pages of records, 474 pages were released in full, 2,019 pages were released in part, and 1,654 pages were withheld in their entirety. *Id.* To support its withholdings, Defendants invoked Exemptions 5, 6, 7(C), and 7(E). *See* Defs. Br. at 8–20.

**E. The Parties' Prior Summary Judgment Briefing and Subsequent Proceedings.**

The parties filed cross motions for summary judgment in 2020. *See* ECF Nos. 43, 45, 49, 51. On July 2, 2020, the Court denied Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment, ordering Defendants to submit a new *Vaughn* Index and accompanying declaration on or before September 30, 2020. ECF No. 52. The Court also ordered the parties to consider mediation. *Id.*

Following Defendants' filing of its renewed *Vaughn* Index and accompanying declaration, the parties engaged in an informal mediation process with the aim of resolving or narrowing the issues to be decided in any subsequent summary judgment briefing. Those mediation efforts were, for the most part, unsuccessful, and the parties filed a proposed briefing schedule on February 2, 2021, which the Court granted. *See* Minute Order, Feb. 3, 2021.

## LEGAL STANDARDS

FOIA "core purpose" is to contribute to "public understanding *of the operations or activities of the government.*" *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 775 (1989) (emphasis original, citations omitted). "Official information that sheds

[1] Because the parties negotiated the scope of CBP's search in response to Plaintiff's First and Third FOIA Request, Plaintiff does not challenge the sufficiency of CBP's search for records responsive to those requests. Plaintiff also does not challenge the sufficiency of CBP's search for records responsive to Plaintiff's Second FOIA Request.

light on an agency's performance of its statutory duties falls squarely within that statutory purpose." *Id.* at 773.

The Act requires that agency records be made "promptly available" upon request unless they fall within one of FOIA's nine enumerated exemptions. 5 U.S.C. § 552(a)(3), (b). "[T]hese exemptions have been consistently given a narrow compass[,]" *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989), and FOIA mandates that any "reasonably segregable portion of a record" be released even if other parts are exempt. 5 U.S.C. § 552(b). In 2016, Congress passed the FOIA Improvement Act of 2016, which amended FOIA to, among other things, add a "foreseeable harm" requirement. *See* S. Rep. No. 1114-4, at 3 & n.8. Pursuant to that provision, for all FOIA requests made after June 30, 2016, "an agency must release a record—even if it falls within a FOIA exemption—if releasing that record would not reasonably harm an exemption-protected interest" and if disclosure is not otherwise prohibited by law. *Rosenberg v. Dep't of Defense*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018) (citation omitted).

An agency's compliance with FOIA is reviewed by the district court de novo. 5 U.S.C. § 552(a)(4)(B). The burden is on the agency to prove that a record or portion thereof may be lawfully withheld pursuant to an exemption, and the agency must adequately justify each withholding in a manner that enables the reviewing court to independently evaluate its propriety. *See Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). Courts "impose a substantial burden on an agency seeking to avoid disclosure" on the basis of a FOIA exemption. *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (citations omitted). An agency's showing is inadequate if it "merely recit[es] statutory standards" or is "too vague or sweeping." *Billington v. Dep't of Justice*, 233 F.3d 581, 584 (D.C. Cir. 2000)

(quoting *Campbell v. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999)).

FOIA cases are frequently decided on motions for summary judgment. *See Defenders of Wildlife v. U.S. Border Patrol*, 623 F.Supp.2d 83, 87 (D.D.C. 2009) (collecting cases). An agency is entitled to summary judgment in a FOIA action only if it establishes that it has "fully discharged" its statutory obligations. *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983). If the agency fails to establish that its withholdings are justified, "summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

## ARGUMENT

### I. Defendants have improperly withheld records pursuant to the deliberative process privilege under Exemption 5.

Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The threshold requirement is that the records in question qualify as "inter-agency or intra-agency" memoranda or letters. *See id*. If that threshold requirement is met, the agency must then show that the information withheld falls under one of three common law privileges: (1) the attorney-client privilege; (2) the attorney work product privilege; or (3) the deliberative process privilege. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980).

In determining whether a document warrants protection under the deliberative process privilege, courts look to whether it is (1) "predecisional"—*i.e.*, whether it was generated before the adoption of an agency policy—and (2) whether it is "deliberative"—*i.e.*, whether it reflects "the give-and-take of the consultative process." *Id.*; *see also U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786 (2021).

Here, Defendants assert the deliberative process privilege to withhold a wide range of purportedly "pre-decisional communications" including: (1) "internal agency deliberation about the issuance of the Twitter summons and the use of the 19 U.S.C. § 1509 summons authority"; (2) "how to respond to the Twitter lawsuit"; (3) "how to respond to Congressional, Inspector General, and media requests in relation to the Twitter lawsuit"; (4) "what changes, if any, to make to existing agency policy and training"; and (5) "drafts of the updated directive on the use of 19 U.S.C. § 1509 summons authority." Fourth Howard Decl. ¶ 45.

Defendants have improperly asserted the deliberative process privilege to withhold hundreds of pages of records responsive to Plaintiff's FOIA Requests. As an initial matter, this Court should not permit Defendants to rely upon the privilege to withhold records related to the issuance of the Twitter summons pursuant to the government misconduct exception. Nor have Defendants carried their burden to demonstrate that the withheld material is predecisional and deliberative. Finally, Defendants' paltry showing on foreseeable harm falls far short of the requirement adopted by Congress in the FOIA Improvement Act of 2016.

A. The government-misconduct exception bars Defendants from withholding records related to the issuance of the Twitter summons and its improper use of Section 1509 summons authority.

Defendants may not rely upon the deliberative process privilege of Exemption 5 to withhold records related to "the issuance of the Twitter summons and the use of the 19 U.S.C. § 1509 summons authority," Fourth Howard Decl. ¶ 43, because such withholdings are clearly impermissible under the government-misconduct exception.

"[W]here there is reason to believe the documents sought may shed light on government misconduct, the [deliberative process] privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997) (internal citations

omitted); *see also Enviro Tech Inter., Inc. v. EPA*, 371 F.3d 370, 376–77 (7th Cir. 2004) (collecting cases). Here, there is clearly an "adequate basis for believing that [the documents]" withheld relate to CBP's issuance of an improper Section 1509 summons to Twitter in 2017, as well as CBP's improper use of Section 1509 summons authority more generally—information that "would shed light upon government misconduct." *Judicial Watch, Inc. v. Dep't of State*, 235 F. Supp. 3d 310, 314 (D.D.C. 2017) (citation omitted).

Indeed, DHS's own OIG investigated CBP's improper attempt to use a Section 1509 administrative summons to unmask the individuals behind the @ALT_uscis Twitter account, and as stated in its final report, OIG found that "DHS 3115"—the summons form by which CBP exercises its Section 1509 authority—"*regularly* has been used by CBP [] personnel in violation" of CBP's operating procedures, "violat[]ing [CBP's] own policy *at least 1 out of every 5 times*." Second Townsend Decl. ¶ 8, Ex. G at 4 (emphasis added). The public's entitlement to information about government misconduct like this is precisely why courts have prohibited agencies from relying on the deliberative process privilege to shield records of such misconduct from public view. *See, e.g.*, *Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 154, 164 (D.D.C. 1999) (no privilege where documents related to misuse of a government personnel file to discredit a witness in an ongoing investigation); *Tax Reform Research Grp. v. Internal Revenue Serv.*, 419 F. Supp. 415, 426 (D.D.C. 1976) (no privilege where documents concerned recommendation that the IRS use its powers in a discriminatory fashion against "enemies" of the Nixon administration).

Defendants' *Vaughn* Index identifies a number of records that should be publicly released pursuant to the government misconduct exception. For example, CBP's productions contain an e-mail "attaching a draft report about the Twitter summons investigation," *id.* at 26 (CBP FOIA

00434–00436); e-mail communications and a "draft summary of the events surrounding the issuance of the Twitter summons prepared by agents involved in the case," *id.* at 41 (CBP FOIA 00940–00943); communications "related to the internal investigation into employee misconduct that resulted in the issuance of the Twitter summons," *id.* at 45 (CBP FOIA 01034–01038); and a "June 2017 OPR Memo regarding Issuance of Summons," *id.* at 81 (CBP FOIA 03131–03143).[2] These records, as released to Plaintiff, are collectively attached as Exhibit A to the Second Townsend Declaration. *See* Second Townsend Decl. ¶ 2, Ex. A.

Defendants cannot evade their FOIA obligations by withholding documents that go to the very heart of Plaintiff's FOIA Requests via a conclusory, blanket assertion that such documents are shielded by the deliberative process privilege; this is especially true where the records concern government misconduct. *See Nat'l Day Laborer Org. Network v. U.S. Immigration and Customs Enf't Agency*, 811 F. Supp. 2d 713, 741–42 (S.D.N.Y. 2011) ("The concern of the [deliberative process] privilege is to prevent the chilling of internal agency discussions that are necessary to the operation of good government; it is not concerned with chilling agency efforts to obfuscate, which are anathema to the operation of democratic government.").

B. Defendants have failed to show that withheld material is predecisional or deliberative.

The deliberative process privilege applies to records that are both "predecisional" and "deliberative." *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 187. A record is "predecisional if it was generated before the adoption of an agency policy and deliberative if it reflects the give-and-take of the consultative process." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006)

[2] Defendants, as part of their re-release of material during the parties' informal mediation process, removed the redaction on CBP FOIA 03143; that redaction no longer remains at issue. *See* Second Townsend Decl. ¶ 18, Ex. L at 98 (CBP FOIA 03143).

(internal quotations and citations omitted). "[F]actual information generally must be disclosed," *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992), unless it is "inextricably intertwined with the deliberative sections of documents[,]" *In re Sealed Case*, 121 F.3d at 737, or "reflects an exercise of discretion and judgment calls[,]" *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (internal quotation and citation omitted). The "court must be able 'to pinpoint an agency decision or policy *to which the document contributed*.'" *Senate of the Com. of. P.R. on Behalf of Judiciary Comm. v. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987) (emphasis added). Moreover, "even if [a] document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States*, 617 F.2d at 886.

Here, Defendants' *Vaughn* Index still fails to provide basic information—such as the "role played" by a document in a particular deliberative process, "the nature of the decisionmaking authority vested" in the person issuing the document, and "the positions in the chain of command of the parties to the document," *Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 168 (D.D.C. 2017)—necessary to demonstrate that each document withheld by Defendants under the deliberative process privilege was "prepared in order to assist an agency decisionmaker in arriving at his decision rather than to support a decision already made," *Petroleum Info. Corp.*, 976 F.2d at 1434, or whether each such document contributed to the "give-and-take of the deliberative process by which the decision itself is made." *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (1975).

For example, Defendants withheld, in full, an e-mail attachment containing a "1997 memo with additional guidance," purportedly regarding CBP's Section 1509 summons authority.

*See* ECF No. 59-4 at 28[3]; *see also* Second Townsend Decl. ¶ 3, Ex. B at 40–68 (CBP FOIA 00478–00506). Defendants' *Vaughn* Index makes no meaningful showing as to this attachment, merely repeating the boilerplate assertion that Exemption 5 was applied "as it relates to attorney client privilege and the deliberative process" because it "contains a draft response to the inquiry and is deliberative." ECF No. 59-4 at 27. Defendants offer no explanation, whatsoever, as to how a memorandum from *1997* could be "predecisional" or "deliberative" as it pertains to CBP's 2017 issuance of a Section 1509 summons to Twitter.

Defendants also withhold numerous other records that, based on the minimal description provided, appear to be records reflecting the agency's "final disposition[]" of a matter. *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 133 (1975). For example, Defendants withheld what appear to be final PowerPoint presentations providing training on the use of CBP's Section 1509 administrative summons authority. *See* ECF No. 59-4 at 91 (withholding portions "of a powerpoint presentation on the use of customs summons in trade enforcement cases," including "discussions within the presentation on matters of policy regarding the enforcement of summonses"); Second Townsend Decl. ¶ 4, Ex. C at 77–111 (CBP FOIA 03573–03607). Defendants also withheld "an investigative report regarding the emails released on Twitter," an "Executive Summary, Timeline of Twitter Investigation" that was "prepared for leadership as a summary of circumstances that led for [sic] issuance of Twitter Summons," and a "Chart from Investigative Operations Division detailing 1509 Summons by SAC and Date." *See* ECF No. 59-4 at 25, 31, 77 (CBP FOIA 002674–002767, withheld in full); *see also* Second Townsend Decl. ¶ 3, Ex. B at 15–36 (CBP FOIA 00364–00385); *id.* at ¶ 18, Ex. L, at 34–53 (CBP 00626–00645).

[3] Despite CBP's representation that CBP 00478–00506 was "released in full" subject to redactions, ECF No. 59-4 at 28, all but the date and part of the subject line in the cover e-mail were withheld in full. *See* Second Townsend Decl. ¶ 3, Ex. B at 40–68 (CBP 00478–00506).

As to briefing materials presented to senior leadership in particular, "the likelihood that briefing materials and talking points have been relied upon or adopted as official positions after their preparation is particularly high." *Elec. Frontier Found. v. Dep't of Justice*, 826 F. Supp. 2d 157, 170–71 (D.D.C. 2011) (cleaned up, citation omitted).

Defendants also impermissibly withheld documents responsive to Plaintiff's Second FOIA request, including a "document log created by a FOIA analyst" and "discussions between CBP FOIA employees regarding the review process for records being released under FOIA." *See* ECF No. 59-4 at 63; *see also* Second Townsend Decl. ¶ 4, Ex. C at 39–43 (CBP FOIA 01537–01540; 1544). Defendants make no showing, whatsoever, that such material "makes recommendations or expresses opinions on legal or policy matters." *Vaughn*, 523 F.2d at 1144.

Nor is Defendants' reflexive withholding of "drafts," including those of the revised Section 1509 directive, proper. "[D]rafts are not presumptively privileged" and, as with all documents withheld pursuant to the deliberative process privilege, Defendants bear the burden to show with specificity that each document is properly withheld. *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 261 (D.D.C. 2004) (citing *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257 (D.C. Cir. 1982) ("The designation of . . . documents . . . as 'drafts' does not end the inquiry, however. *Coastal States* forecloses the . . . argument that any document identified as a draft is per se exempt.")). Indeed, some or all of these records may have lost their predecisional status due to their adoption by the agency. The absence of any detailed description of these records labeled as "drafts" leaves the Court unable to determine whether any once-deliberative material may have been subsequently adopted and, thus, cannot be withheld.

Finally, Defendants fail to meet the requisite showing that no information—including factual information—in the records withheld under the deliberative process privilege can be

segregated and released. Defendants make a conclusory representation regarding segregability in the form of a single, pro forma paragraph in the Fourth Howard Declaration. *See* Fourth Howard Declaration ¶ 64. But that one paragraph does not satisfy Defendants' obligation:

> [A] blanket declaration that all facts are so intertwined to prevent disclosure under the FOIA does not constitute a sufficient explanation of non-segregability. Rather, for *each* entry the defendant is required to specify in detail which portions of the document are disclosable and which are allegedly exempt.

*Wilderness Soc. v. Dep't of Interior*, 344 F. Supp. 2d 1, 19 (D.D.C. 2004) (internal quotations and citations omitted, emphasis in original).

For these reasons, the Court should deny Defendants' motion for summary judgment as to their deliberative process privilege withholdings. *See Hardy*, 243 F. Supp. 3d at 168.

C. <u>Defendants' deliberative process withholdings fail to comply with FOIA's foreseeable harm provision.</u>

The foreseeable harm requirement added to the Act by the FOIA Improvement Act of 2016 prohibits agencies from withholding records that fall within one of the Act's enumerated exemptions unless the agency demonstrates that it "reasonably foresees that disclosure would harm an interest protected by [that] exemption" or disclosure is prohibited by law. 5 U.S.C. § 552(a)(8); *see also Rosenberg*, 342 F. Supp. 3d at 72; *Ctr. for Investigative Reporting v. U.S. Customs and Border Protection*, 436 F. Supp. 3d 90, 106–07 (D.D.C. 2019); *Judicial Watch v. Dep't of Justice*, 2019 WL 4644029, at *3 (D.D.C. Sept. 24, 2019). In other words, it is not enough for Defendants to show that withheld material falls within a FOIA exemption: The agency must *also* demonstrate that release of that *specific information* would harm an interest protected by an exemption or that its release is otherwise prohibited by law. If the foreseeable harm requirement is not met, then "the document should be released." 114 Cong. Rec. S1496 (Mar. 15, 2016) (statement of Sen. Leahy).

The foreseeable harm provision imposes  a "heightened standard for an agency's withholdings under Exemption 5" which requires that it "do more than 'perfunctorily state that disclosure of all the withheld information . . . would jeopardize the free exchange of information.'" *Judicial Watch, Inc. v. Dep't of Commerce*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019) (quoting *Rosenberg*, 342 F. Supp. 3d at 79). In other words, an agency seeking to satisfy the requirement must both "'identify *specific harms* to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials' and 'connect[] the harms in [a] meaningful way to the information withheld.'" *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106 (*quoting Judicial Watch*, 2019 4644029, at *5). An agency fails to satisfy the foreseeable harm requirement where its declarations and *Vaughn* Index make "claims of foreseeable harm [that] consist[] of 'general explanations' and 'boiler plate language'" and only "generic, across-the-board articulation of harm." *Id.* at 107.

In *Machado Amadis v. Department of State*, the D.C. Circuit addressed an agency's foreseeable harm showing as to redactions to a specific type of record: so-called "Blitz Forms" used by Justice Department attorneys to make recommendations to their superiors regarding the adjudication of specific FOIA appeals. 971 F.3d 364, 370 (D.C. Cir. 2020). The D.C. Circuit in *Amadis* determined that the agency's affidavit in that case "specifically focused on 'the information at issue'" and "concluded that disclosure of that information 'would'" foreseeably harm an interest protected by the deliberative process privilege, and thus adequately tied the foreseeable harm articulated by the agency to the contents of the redactions at issue. *Id.* at 371.

Here, in contrast, the Fourth Howard Declaration contains only generic assertions of harm insufficiently tethered to the myriad different types of information withheld, and thus cannot satisfy the requirements of the foreseeable harm provision. *Compare Machado Amadis*,

971 F.3d at 371 ("OIP's affidavit adequately explained that full disclosure of the Blitz Forms would discourage line attorneys from candidly discuss[ing] their ideas, strategies, and recommendations, thus impairing the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals") (quotations omitted) *with* Fourth Howard Decl. ¶¶ 46–52 (claiming for broad categories of records that "employees would not feel comfortable to divulge their views on ongoing cases or issues"; that individuals "would not share their views"; "may not voice their ideas or concerns freely"; and that disclosure "would have a chilling effect on communication").

Indeed, Defendants appear to go to great lengths to avoid specifically referencing the foreseeable harm requirement in their brief, broadly repeating variations on the boilerplate statement that "the harm resulting from the release of these communications would be a chilling effect on open and frank discussions within the agency and amongst its employees." Defs. Br. at 12. Such a perfunctory statement, however, falls far short of meeting the Act's heightened requirements. *Judicial Watch, Inc.*, 375 F. Supp. at 101 ("If the mere possibility that disclosure discourages a frank and open dialogue was enough for the exemption to apply, then Exemption 5 would apply whenever the deliberative process privilege was invoked regardless of whether disclosure of the information would harm an interest protected by the exemption."). Further, the renewed *Vaughn* Index repeats "identical, boilerplate statements" that fail to even approach what is needed to meet the "independent and meaningful burden" imposed by the foreseeable harm provision. *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106; *see also* ECF No. 59-4 at 27 ("Exemption (b)(5) has been applied as it relates to the deliberative process"); Second Townsend Decl. ¶ 3, Ex. B at 37–39 (CBP FOIA 00440–00442).

Nor does Defendants' barebones assertion of harm comport with its position that CBP should be permitted to reflexively and categorically redact the names of CBP employees from any and all records produced subject to FOIA. Defs. Br. at 15–18; *see also infra* Section III. It is illogical at best—and disingenuous at worst—for Defendants to argue that discussions among agency employees would be "chilled" by disclosure where the agency simultaneously takes the position that these employees' names should not be released under Exemptions 6 and 7(C). *See Heffernan v. Azar*, 317 F. Supp. 3d 94, 131–32 (D.D.C. 2018); *see also Hardy*, 243 F. Supp. 3d at 173 ("[I]n cases where there is no identifying information that would link an individual to a document[,] there is little likelihood that disclosure would injure an agency's deliberative process." (citation omitted)).

These are exactly the kinds of improper and unnecessary withholdings that the foreseeable harm provision was added to FOIA to address. Plaintiff's FOIA Requests seek information concerning CBP's improper use of its administrative summons authority under 19 U.S.C. § 1509 to compel Twitter to reveal the person(s) behind an anonymous account publishing commentary critical of the government. A subsequent report issued by DHS's OIG found CBP's use of its Section 1509 summons authority to be routinely improper, Second Townsend Decl. ¶ 8, Ex. G, and spurred a year-long agency review process culminating in "a comprehensive directive on how and when to use the 19 U.S.C. § 1509 summons." Defs. Br. at 9. The public is entitled to understand how the Section 1509 summons was misused in the case of the @ALT_uscis Twitter handle, and what the agency did to address that error, even if release of such material under FOIA might cause "public officials [to] be embarrassed" because "errors and failures might be revealed." S. Rep. No. 114–4 at 8.

In sum, Defendants have failed to meet their burden to demonstrate that the withheld materials are subject to the deliberative process privilege in the first instance, and their motion for summary judgment as to these withholdings must be denied. Further, Plaintiff is entitled to summary judgment in its favor with respect to material withheld under Exemption 5's deliberative process privilege that is subject to the government-misconduct exception, as well as material the disclosure of which would not cause foreseeable harm to an interest sought to be protected by Exemption 5.

## II. Defendants have improperly withheld records pursuant to the attorney-client and attorney work product privileges under Exemption 5.

For the attorney-client privilege to apply to a communication, the communication "must be 'for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding.'" *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 308 (D.D.C. 2013) (quoting *In re Grand Jury*, 475 F.3d 1299, 1304 (D.C. Cir. 2007)). Like all privileges, the attorney-client privilege must be narrowly construed and "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976). Confidentiality is mandated at the time of the communication and must be maintained thereafter for the privilege to apply; the burden is on the agency to demonstrate that confidentiality was expected in the handling of these communications, and that it was reasonably careful to keep the information confidential. *Coastal States*, 617 F.2d at 863; *see also Cuban v. Sec. and Exch. Comm'n*, 744 F. Supp. 2d 60, 79–80 (D.D.C. 2010).

The attorney work product privilege applies to "documents and tangible things that are prepared in anticipation of litigation or for trial by an attorney." *Am. Immigration Council v. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 221 (D.D.C. 2012) (quoting Fed. R. Civ. P.

26(b)(3)). "When considering whether a document is prepared 'in anticipation of litigation,'" the D.C. Circuit "employs a 'because of' test, inquiring 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Shapiro v. Dep't of Justice*, 153 F. Supp. 3d 253, 289–90 (D.D.C. 2016) (quoting *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010)). The D.C. Circuit "has drawn a line between 'neutral, objective analyses of agency regulations'" which are not subject to the privilege and "'more pointed documents'" that "'advise the agency of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome.'" *Am. Immigration Council*, 905 F. Supp. 2d at 221–22 (quoting *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C. Cir. 1987)).

In order to "discharge its evidentiary burden" for withholding information pursuant to the work-product privilege, an agency must "(1) provide a description of the nature of and contents of the withheld document, (2) identify the document's author or origin, (3) note the circumstances that surround the document's creation, and (4) provide some indication of the type of litigation for which the document's use is at least foreseeable." *Ellis v. Dep't of Justice*, 110 F. Supp. 3d 99, 108 (D.D.C. 2015), *aff'd*, No. 15-5198, 2016 WL 3544816 (D.C. Cir. June 13, 2016) (citing *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998)).

Defendants have withheld three categories of records pursuant to the attorney-client and/or attorney work product privileges: (1) communications about the Twitter lawsuit and the agency's use of the 19 U.S.C. 1509 summons authority; (2) drafts of the 19 U.S.C. 1509 summons directive that "contain comments and edits made by CBP attorneys for the purpose of

ensuring legal sufficiency of the document"; and (3) communications about how to process Plaintiff's FOIA requests. Fourth Howard Decl. ¶¶ 50–52.

As an initial matter, Defendants' *Vaughn* Index and the Fourth Howard Declaration fall short of providing sufficient evidence to demonstrate that "confidentiality was expected" for those communications, and whether steps were taken to keep the records confidential. *Cf. Cuban*, 744 F. Supp. 2d at 79–80. For those communications withheld in full, Defendants fail to even identify the document's author/sender or its recipient(s), thus making it impossible to determine if the attorney-client privilege applies. *See generally* ECF No. 59-4. For those communications withheld in part, such as email exchanges, the identities of the sender and recipient(s) are, in virtually all cases, redacted under claims of Exemptions 6 and 7(C). *See, e.g.*, Second Townsend Decl. ¶ 3, Ex. B at 69–72 (CBP FOIA 02387–02390). As such, Plaintiff is unable to determine who was included in the communications, whether any non-agency persons were included on the communications, and whether the privilege may have been waived. In the absence of such information, neither Plaintiff nor the Court can evaluate whether the required confidentiality was expected or maintained with respect to these records.

Similarly, with respect to the attorney work product privilege, the Fourth Howard Declaration and Defendants' *Vaughn* Index in many instances fail to satisfy Defendants' burden to provide information to demonstrate "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation," *Shapiro*, 153 F. Supp. 3d at 290, such as "a description of the nature of and contents of the withheld document" and "the circumstances that surround[ed]" its creation." *Ellis*, 110 F. Supp. 3d at 108.

Though not specifically addressed in Defendants' briefing or the Fourth Howard Declaration, it is clear from a review of Defendants' *Vaughn* Index that a number of records have been improperly withheld. For example, Defendants impermissibly withheld purported "advice to the client regarding how to respond to a media request." *See* ECF No. 59-4 at 2; *see also id.* at 24; Second Townsend Decl. ¶ 3, Ex. B at 2–14 (CBP FOIA 0040–0045; 0342–0349). Defendants fail to meet their burden here to demonstrate that confidentiality was expected in the handling of this "advice," particularly where the communications were designed to be disclosed to a third party. *See Judicial Watch, Inc.*, 297 F. Supp. 2d at 267 (the agency bears the burden of showing that it "supplied information to its lawyers 'with the expectation of secrecy and [the information] was not known by or disclosed to any third party'") (citing *Mead Data Cent*., 566 F.2d at 254).

Further, Defendants withheld "portions of [] PowerPoint presentations that contain legal advice for CBP Office of Trade related to the use of 19 U.S.C. 1509 summons," "relevant information that should be included in a 19 USC 1509 summons," and "portions of [] PowerPoint presentations that include internal legal guidance regarding CBP's [False Claims Act] authorities and guidance regarding [CBP Office of Chief Counsel's] role in [False Claims Act] cases," and training "about the distinction between 19 USC 1509 examination and summons authority and the scope of 19 USC 1509 authority." ECF No. 59-4 at 55, 72, 95; *see also* Second Townsend Decl. ¶ 4, Ex. C, at 7–38, 44–76, 112–151 (CBP FOIA 01475–01506; 02268–02300; 03790–03829;).[4] As an initial matter, Defendants fail to assert that these records were prepared for litigation. *See State of Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 69–70 (1st Cir. 2002)

[4] Defendants, as part of their re-release of material during the parties' informal mediation process, removed the redactions on CBP FOIA 02273 and 02280; those redactions no longer remain at issue. *See* Second Townsend Decl. ¶ 18, Ex. L, at 86–87 (CBP FOIA 02273, 02280).

(holding that an agency failed to show documents were prepared in anticipation of litigation where agency did not establish any correlation between withheld documents and the litigation for which each document was created). Nor may an agency withhold "neutral, objective analyses of agency regulations" resembling "question and answer guidelines which might be found in an agency manual" even when prepared by attorneys. *Coastal States*, 617 F.2d at 858, 863. Finally, as detailed above, Defendants have not shown that the records at issue were designed to remain confidential. *Id.* at 863 (determining memoranda were not covered by attorney-client privilege where material was "filed and indexed for future use," "relied on as precedent," and "used as training materials for new personnel").

Nor may Defendants claim the attorney-client privilege to withhold records between CBP's Office of Professional Responsibility and counsel for a third party (here, Twitter). *See, e.g.*, ECF No. 59-4 at 58; Second Townsend Decl. ¶ 4, Ex. C at 4–6 (CBP FOIA 01453–01455). Indeed, not only are such records not privileged, but also they do not even meet the threshold requirement for withholding pursuant to Exemption 5, which applies only to records that are "inter-agency or intra-agency memorandums or letters." 5 U.S.C. § 552(b)(5); *see also Fed. Open Mkt. Comm. of the Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 352 (1979).

Finally, even assuming, *arguendo*, that any of the material Defendants withheld properly falls within the scope of the attorney-client or attorney work product privilege, Defendants have not met their burden to demonstrate that reasonably foreseeable harm would result from their disclosure. *See* 5 U.S.C. 552(a)(8)(A). The Fourth Howard Declaration broadly states that disclosure of privileged information "would shake the very foundation of the legal profession[.]" Fourth Howard Decl. ¶ 50. But this boilerplate justification falls far short of articulating "'a link

between the specified harm and specific information contained in the material withheld.'" *Judicial Watch*, 375 F. Supp. 3d at 100 (quoting H.R. Rep. No. 114-391, at 9 (2016)).

## III. Defendants have improperly withheld records under Exemptions 6 and 7(C).

Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement" to the extent that their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[5] Defendants fail to meet their burden to demonstrate that either exemption applies.

In the context of Exemption 6, the D.C. Circuit has made clear that there is a "presumption in favor of disclosure [that] is as strong as can be found anywhere in the Act." *Multi Ag Media LLC v. USDA*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation and internal quotation marks omitted). Given the "presumption of openness inherent in FOIA," *Campbell*, 164 F.3d at 33, Exemption 6 permits withholding records or information therein *only* if "disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest," *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989). In determining what constitutes a "substantial" privacy interest, the Court must "balance the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (citation and internal quotation marks omitted). If disclosure would implicate a substantial privacy interest, the court

[5] The balancing test applicable under Exemption 6 differs from that of Exemption 7(C) in that the latter omits the word "clearly" from the required showing. Plaintiff nevertheless addresses the exemptions together because (1) Defendants assert them in tandem; and (2) the D.C. Circuit "has deemed the privacy inquiry of Exemptions 6 and 7(C) to be essentially the same." *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1125 (D.C. Cir. 2004).

"must weigh that privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy." *Nat'l Ass'n of Retired Fed. Emps.*, 879 F.2d at 874. Similarly, under Exemption 7(C), "a court must balance the public interest in disclosure against the interest Congress intended the Exemption to protect," *Reporters Comm.*, 489 U.S. at 776, and must apply this balancing test "to the specific facts of each case," *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91 (D.C. Cir. 1984).

Here, Defendants have reflexively applied Exemptions 6 and 7(C) to categorically withhold disclosure of all "non-public facing CBP employees, including the names of law enforcement officers, as well as their email addresses and phone numbers (PII)." Fourth Howard Decl. ¶ 54. However, Defendants have failed to establish that these individuals have *any* privacy interest, let alone a substantial one, in their mere employment by CBP that would outweigh the significant public interest in access to this information.[6]

At the outset, Exemption 6 "does not categorically exempt individuals' identities." *Judicial Watch*, 449 F.3d at 153. As the D.C. Circuit has explained, the privacy interests contemplated by Exemption 6 are aimed at protecting only "intimate details of personal and family life, not business judgments and relationships." *Sims v. Cent. Intelligence Agency*, 642 F.2d 562, 575 (D.C. Cir. 1980). Similarly, "[b]ecause the myriad of considerations involved in the Exemption 7(C) balance defy rigid compartmentalization, per se rules of nondisclosure based upon the type of document requested, the type of individual involved, or the type of activity inquired into, are generally disfavored." *Stern*, 737 F.2d at 91.

[6] Plaintiff does not challenge the withholding of individuals' e-mail addresses or phone numbers under Exemptions 6 and/or 7(C).

Here, Defendants request that this Court apply exactly such an impermissible *per se* rule, broadly asserting that "[t]he identification of an individual in association with the performance of their duties at a law enforcement agency creates a safety threat and risks unwarranted attribution and attention to the employee beyond the confines of his or her job and into his or her personal life." Fourth Howard Decl. ¶ 55. In other words, with the exception of the names of a small handful of high-level officials, Defendants assert that the names of every non-public facing CBP employee included in the records responsive to Plaintiff's FOIA requests should be redacted, no matter their role with the agency or their relationship to the records at issue. *Id*.

This is impermissible. Indeed, Defendants make the extreme claim that *all* CBP employees have a privacy interest in being named as an employee of the agency due to the "current environment." Fourth Howard Decl. ¶ 56. As "evidence" for this claim, Defendants cite to three incidents, all of which occurred nearly two years ago in June and July of 2019, in which (1) CBP vehicles were vandalized in a Tucson, Arizona parking lot; (2) CBP border patrol agents in Idaho "received threats via fax"; and (3) the group "Antifa" posted "threats to law enforcement" on social media. Fourth Howard Decl. ¶ 56. Defendants also claim that CBP employees "regularly receive threats on government phones by callers using altered numbers and spoofed voices and have been harassed on public transportation solely for their perceived affiliation with the DHS or CBP." *Id.* Plaintiff could find no publicly available support for these claims, and Defendants offer no further detail or description of these purported events and why—even if they occurred—they would justify permitting CBP to redact, wholesale, the names of CBP and DHS employees responsible for, *inter alia*, responding to FOIA requests and/or overseeing the use of CBP's administrative summons authority. Further, that CBP is now

exempt from the Office of Personnel Management's salary information disclosure policy, *id.*, is irrelevant; Plaintiff's FOIA requests do not seek salary information for any CBP employees.

Particularly egregious is the continued redaction of the names of Special Agent Adam Hoffman and Special Agent in Charge Stephen P. Caruso from records responsive to Plaintiff's FOIA requests. *See, e.g.*, Second Townsend Decl. ¶ 4, Ex. C at 2–3 (CBP FOIA 00312–00313).[7] The names of these agents and their involvement in the Twitter summons controversy are well known; the unredacted summons was attached as an exhibit to the complaint filed by Twitter in federal district court against CBP challenging the Section 1509 summons issued to it. Copies of that complaint, with exhibits, were included in CBP's production of responsive records. *See generally* ECF No. 59-4. Despite this, the names of the senders and recipients of e-mail communications related to the Twitter summons, including communications that appear to be drafted by Hoffman or Caruso, are inexplicably still being withheld under Exemptions 6 and 7(C). *See id.* These agents have no privacy interest vis-à-vis records associated with the issuance of what was deemed to be an "improper" summons to Twitter for its user data, particularly where their names and involvement in the matter have long been publicly known.

In the context of Exemption 7(C), the D.C. Circuit has recognized that a "relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Citizens for Responsibility & Ethics in*

[7] Defendants, as part of their re-release of material during the parties' informal mediation process, released communications between Agent Hoffman and counsel for Twitter with Hoffman's name unredacted. *See* Second Townsend Decl. ¶ 18, Ex. L at 28–31 (CBP FOIA 00318–00321). Plaintiff respectfully requests that the Court order Defendants to remove any and all redactions to the names of Agent Hoffman, Special Agent in Charge Caruso, and any other CBP employee involved in issuing the summons to Twitter.

*Washington v. Dep't of Justice*, 746 F.3d 1082, 1093 (D.C. Cir. 2014) (brackets in original) (citations and internal quotation marks omitted). This includes the "repeated[]" recognition of the "public interest in the manner in which [an agency] carries out substantive law enforcement policy[.]" *Id.* (collecting cases). Plaintiff's FOIA requests concern matters of significant public concern: CBP's improper efforts to employ its administrative summons authority to compel a social media company to unmask the authors of an anonymous account publishing First Amendment-protected criticism of the government, as well as how CBP responded to challenges to that authority. These records concern what OIG recognized to be a pattern of misuse of Section 1509 summonses, and contain information about the government officials who both participated in the agency's efforts to unmask the anonymous Twitter user(s), as well as the subsequent evaluation of the agency's conduct following public exposure of that improper effort. *See, e.g.*, Second Townsend Decl. ¶ 8, Ex. G at 2–4. Defendants' paltry showing fails to carry their burden to justify the withholding of CBP and DHS employee names in this case, particularly given the significant public interest in understanding both how CBP agents improperly used the agency's administrative summons authority and what steps the agency has taken to remedy that abuse.

Because Defendants have not—and cannot—demonstrate that the withheld names are exempt under Exemptions 6 and 7(C), they should be released, and the Court need not address the agency's failure to comply with the foreseeable harm provision. *See* 5 U.S.C. 552(a)(8)(A). However, even assuming, *arguendo*, that any of the withheld material implicates more than a *de minimis* privacy interest that outweighs the strong public interest in favor of disclosure—which it does not—these names would still be required to be disclosed under the Act's foreseeable harm provision, *see id*. Defendants have not demonstrated that reasonably foreseeable harm—in the

form of an unwarranted invasion of privacy—would result from the disclosure of the names of individuals who are employed by CBP, particularly those who were directly involved in the Twitter summons and whose names have already been made publicly available. For this reason, too, Defendants have not met their burden to demonstrate that their Exemption 6 and Exemption 7(C) withholdings are lawful.

**IV. Defendants have improperly withheld records under Exemption 7(E).**

Exemption 7(E) applies to records compiled for law enforcement purposes[8] where release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Exemption 7(E) encompasses "information regarding obscure or secret techniques," and protects "documents which assertedly relate to law enforcement procedures *not known to the public*." *Jaffe v. Cent. Intelligence Agency*, 573 F. Supp. 377, 387 (D.D.C. 1983) (emphasis added). To justify withholding material under Exemption 7(E), "the agency must at least provide *some* explanation of what procedures are involved and how they would be disclosed," *Citizens for Responsibility & Ethics in Washington*, 746 F.3d at 1102 (citations omitted, emphasis in original), and must also show "logically" how release of the requested information will "risk circumvention of the law." *Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37, 42 (D.C. Cir. 2011) (citations omitted).

Here, Defendants rely on Exemption 7(E) to withhold four categories of information: (1) "law enforcement techniques and procedures that CBP uses to investigate unauthorized disclosure of information and cybersecurity threats"; (2) "law enforcement techniques and

[8] Plaintiff does not challenge Defendants' assertion that the records at issue were compiled for law enforcement purposes.

procedures CBP uses to conduct internal investigations"; (3) "agency records reflecting the use or non-use of particular administrative summons authority"; and (4) "internal agency codes, databases, drives, group email addresses, CBP URL addresses, links, folder locations, file names, fax numbers, document identification numbers and reference codes." Fourth Howard Decl. ¶ 58. Plaintiff focuses its challenge to categories 1–3 of Defendants' Exemption 7(E) withholdings.[9]

Plaintiff challenges Defendants' withholdings pursuant to Categories 1 and 2, which purport to withhold "techniques and procedures" CBP uses to "investigate unauthorized disclosure of information and cybersecurity threats" and "conduct internal investigations"—both of which concern CBP's efforts to determine "whether a series of allegedly internal emails disclosed by a certain Twitter account were the result of misconduct by a CBP employee or a compromise in the security of CBP systems," Fourth Howard Decl. ¶ 59. In other words, these records appear to reflect CBP's efforts to determine whether internal e-mail communications released via @alt_USCIS were leaked by a CBP employee or the result of a third-party hack into CBP's e-mail system. Defendants have failed to justify the withholding of either category of records pursuant to Exemption 7(E).

As to Category 1, Defendants withheld a series of e-mail communications between CBP Office of Information Technology employees "realted [sic] to cybersecurity breaches." ECF No. 59-4 at 52–53; *see also* Second Townsend Decl. ¶ 5, Ex. D, at 7–29 (CBP 01291–01313). A review of the miniscule portion of these communications that remain unredacted makes clear that

[9] Plaintiff does not challenge Defendants' withholding of Category 4 (internal agency codes, databases, drives, group email addresses, CBP URL addresses, links, folder locations, file names, fax numbers, document identification numbers and reference codes). Plaintiff also does not challenge the Exemption 7(E) withholdings related to "polygraph examination procedures, grand jury information, immigration paroles and benefits" located at CBP FOIA 001444–001473. *See* ECF No. 59-4 at 55.

the withheld records reflect CBP's efforts to determine how @alt_USCIS received internal CBP e-mails. Second Townsend Decl. ¶ 5, Ex. D, at 7 ("Draft [redacted] has been created to track the email events regarding ALT_USCIS"). Despite this, the Fourth Howard Declaration recycles the boilerplate justification that "[r]elease of this non-public information would disclose law enforcement tactics and priorities and, conversely, areas where investigative resources may not be focused" and that the information, if revealed, "could be exploited and used to develop and employ countermeasures to diminish the effectiveness of CBP's cybersecurity and counterintelligence efforts." Fourth Howard Decl. ¶ 59. Such boilerplate assertions fail to provide an adequate justification for these withholdings because they do not demonstrate "logically" how release of the requested information will "create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42. In other words, such a "near-verbatim recitation of the statutory standard is inadequate" because it does not explain "what procedures are at stake" or how disclosures of the records at issue "could reveal such procedures." *Citizens for Responsibility & Ethics in Washington*, 746 F.3d at 1102.

Defendants' efforts to justify withholding of records reflecting "techniques and procedures CBP uses to conduct internal investigations," Fourth Howard Decl. ¶ 60, fares even worse. Indeed, the Fourth Howard Declaration and updated *Vaughn* Index do not even *attempt* to justify these withholdings, stating only that they reflect "the types of techniques and procedures routinely used in such investigations, and non-public details about when, how, and under what circumstances they are used." *Id.*; *see also* ECF No. 59-4 at 45 (claiming redactions applied to "investigative techniques and procedures related to conducting internal investigations of employee misconduct"); Second Townsend Decl. ¶ 2, Ex. A, at 9–13 (CBP 01034–01038). Defendants' brief does little more, dedicating a single nonsensical sentence to justify its

Exemption 7(E) withholdings on CBP's "internal investigations." *See* Defs. Br. at 19 ("Likewise, with respect to CBP's investigative techniques for internal investigations would allow bad actors to avoid detection and thwart CBP's effort."). This is plainly insufficient.

Exemption 7(E) permits the government to withhold records if it adequately demonstrates a reasonable risk that criminals will use them to circumvent detection, apprehension, or prosecution. *See Blackwell*, 646 F.3d at 42. Defendants' boilerplate representation about its efforts to determine the source of leaked information to a public Twitter account critical of the agency stretches Exemption 7(E) well beyond its logical limit and wholly fails to "demonstrate *logically* how the release of the requested information" would risk circumvention of the law. *Mayer Brown LLP v. Internal Revenue Serv.*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (emphasis added) (cleaned up) (citation omitted). Defendants cannot be permitted to shield directly responsive documents from disclosure merely by invoking the word "investigate" and burying them under blanket, unsupported assertions that such documents are subject to Exemption 7(E). *See PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 252 (D.C. Cir. 1993) ("Had the [agency] submitted a more specific affidavit . . . providing reasons why releasing each withheld section would create a risk of circumvention of the law, or had the [agency] clearly indicated why disclosable material could not be segregated from exempt material, it might have established a legitimate basis for its decision.").

Plaintiff also challenges Defendants' withholding of Category 3, which reflect records reflecting the "issuance or non-issuance of administrative summonses in specific investigations, some of which maybe [sic] ongoing." Fourth Howard Decl. ¶ 62. Defendants' Category 3 withholdings are improper. In particular, Plaintiff challenges Defendants' withholding of a chart, in full, "detailing 1509 Summons by SAC and Date." *See* ECF No. 59-4 at 77 (CBP FOIA

002674–002767, withheld in full). To reiterate, this FOIA case seeks records about CBP's use (and misuse) of a publicly-known administrative provision of the Tariff Act of 1930—specifically, one that authorizes CBP to compel production of a narrow class of records related to the importation of merchandise. 19 U.S.C. § 1509; *see also* Second Townsend Decl. ¶ 8, Ex. G at 5 (detailing the summons authority as for, *inter alia*, "determining the liability of any person for duties, fees, and taxes due to the United States"). Courts in this district have repeatedly held that Exemption 7(E) applies to "information and techniques that are secret and 'not generally known to the public.'" *Myrick v. Johnson*, 199 F. Supp. 3d 120, 124 (D.D.C. 2016) (quoting *Nat'l Sec. Archive v. Fed. Bureau of Investigation*, 759 F. Supp. 872, 885 (D.D.C. 1991) and citing *Jaffe*, 573 F. Supp. at 387). CBP's administrative summons authority—if it can even be described as a law enforcement "technique"—is most certainly well known. *See* Second Townsend Decl. ¶ 8, Ex. G at 2. Defendants' boilerplate recitation that disclosure of information related to other examples of its use of Section 1509 summons authority "would allow individuals to know the types of activities that would trigger a full investigation as opposed to a preliminary investigation," Fourth Howard Decl. ¶ 62, is therefore simply illogical.

Indeed, Defendants fail to provide any specific information, whatsoever, as to how information contained within this chart, as it relates to a well-known administrative summons authority, is "not generally known to the public" and would "risk circumvention of the law." *Nat'l Sec. Archive*, 759 F. Supp. at 885. And clear segregability concerns arise where, as here, a 94-page document has been withheld in full. *See Campbell*, 164 F.3d at 31 ("a conclusory assertion that material is exempt and nonsegregable is insufficient to support nondisclosure"). To the extent that the chart does reflect investigations "which maybe [sic] ongoing," Fourth Howard Decl. ¶ 62, Defendants make no showing as to why it could not redact material related

to such "ongoing investigations" from the record.

Finally, though not addressed in the Fourth Howard Declaration or Defendants' briefing, Defendants impermissibly redact e-mail communications between CBP's Office of Professional Responsibility and counsel for Twitter transmitting the 19 U.S.C. § 1509 summons. *See* ECF No. 59-4 at 23, 34 (redacting "LEO procedures as it relates to the summons"); *see also* Second Townsend Decl. ¶ 4, Ex. C at 2–3 (CBP 00312–00313); *see also id.* ¶ 5, Ex. D at 2–6 (CBP 00718–00722). Certainly Defendants cannot claim such records pose a "risk of circumvention of the law" where they were transmitted, in unredacted form, to counsel representing the *target* of such an administrative summons.

Because Exemption 7(E) does not apply to the records at issue, the Court, once more, need not address Defendants' failure to comply with the foreseeable harm provision. Assuming, *arguendo*, that Defendants' Exemption 7(E) claims are proper—which they are not—its withholdings would still be improper under the provision. Defendants are required to describe the "link between [the asserted] harm and specific information contained in the material withheld," *Judicial Watch*, 375 F. Supp. 3d at 101 (citation omitted), which it has wholly failed to do. *See* Fourth Howard Decl. ¶¶ 60–62. Defendants' "generic and nebulous articulations of harm," *Judicial Watch v. Dep't of Justice*, 2020 WL 5798442, at *3 (D.D.C. Sept. 29, 2020) (citation omitted), are plainly insufficient.

## CONCLUSION

It is evident that Plaintiff is entitled to summary judgment in their favor with respect to Exemptions 5, 6, and 7 in light of the strong public interest in disclosure, and to certain material withheld under Exemption 5's deliberative process privilege subject to the government-misconduct exception. For the foregoing reasons, Defendants' Motion for Summary Judgment

should be denied. Under Rule 56, because Defendants failed to meet their burden under FOIA, summary judgment should be granted to Plaintiff.

Dated: April 20, 2021

Respectfully submitted,

*/s/ Katie Townsend*
Katie Townsend
DC Bar No. 1026115
Jennifer A. Nelson
DC Bar No. 1011387
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
Email: ktownsend@rcfp.org
Email: jnelson@rcfp.org

*Counsel for Plaintiff*