UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS,

*Plaintiff*,

v.

UNITED STATES CUSTOMS AND
BORDER PROTECTION, *et al.*,

*Defendants*.

Civil Action No. 18-0155 (TNM)

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
FOR SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.    FOIA EXEMPTION 5 .......................................................................... 1

A.   The government-misconduct exception does not bar CBP from invoking the deliberative process privilege. ........................................................................ 2

B.   Defendants have met their burden to demonstrate that the documents withheld pursuant to the deliberative process privilege are predecisional and deliberative. .................... 4

C.   CBP complied with FOIA's foreseeable harm provision. ..................................... 8

D.   CBP correctly applied the attorney-client and work product privileges ............... 10

II.   CBP PROPERLY WITHHELD PURSUANT TO FOIA EXEMPTIONS 6 AND 7(C) THE NAMES OF IT'S NON-PUBLIC FACING EMPLOYEES ................................ 12

III.  CBP PROPERLY APPLIED FOIA EXEMPTION 7(E) TO WITHOLD LAW ENFORCEMENT TECHNIQUES AND PROCEDURES .................................. 14

# TABLE OF AUTHORITIES

## CASES

*Am. Ctr. for Law & Justice v. Dep't of Just.,*
   325 F. Supp. 3d 162 (D.D.C. 2018) ........................................................ 8

*Amadis v. Dep't of Justice,*
   388 F. Supp. 3d 1 (D.D.C. 2019) .......................................................... 9

*Amadis v. Dep't of State,*
   971 F.3d 364 (D.C. Cir. 2020) ............................................................. 7

*Citizens for Responsibility & Ethics in Wash. v. Dep't of Homeland Sec.,*
   Civ. A No. 20-1400 (CRC), 2021 WL 950415 (D.D.C. Mar. 12, 2021) ............... 14

*Dudman Commc'ns Corp. v. Dep't of Air Force,*
   815 F.2d 1565 (D.C. Cir. 1987) ........................................................ 7, 9

*Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.,*

384 F. Supp. 2d 100 (D.D.C. 2005) ........................................................................ 13

*Families for Freedom v. U.S. Custom & Border Prot.*,
797 F. Supp. 2d 375 (S.D.N.Y. 2011) ................................................................... 12

*Frontier Found. v. DOJ*,
739 F.3d 1 (D.C. Cir. 2014) ..................................................................................... 8

*Goodrich Corp. v. EPA*,
593 F. Supp. 2d 184 (D.D.C. 2009) .......................................................................... 7

*Hall & Assocs. v. U.S. Envtl. Prot. Agency*,
14 F. Supp. 3d 1 (D.D.C. 2014) ................................................................................ 3

*ICM Registry, LLC v. Dep't of Commerce*,
538 F. Supp. 2d 130 (D.D.C. 2008) .......................................................................... 3

*Judicial Watch v. Dep't of Army*,
466 F. Supp. 2d 112 (D.D.C. 2006) ........................................................................ 10

*Judicial Watch, Inc. v. Dep't of Com.*,
337 F. Supp. 2d 146 (D.D.C. 2004) ........................................................................ 16

*Judicial Watch, Inc. v. Dep't of Homeland Sec.*,
736 F. Supp. 2d 202 (D.D.C. 2010) ........................................................................ 11

*Judicial Watch, Inc. v. Dep't of State*,
235 F. Supp. 3d 310 (D.D.C. 2017) .......................................................................... 4

*Judicial Watch, Inc. v. Dep't of State*,
241 F. Supp. 3d 174 (D.D.C. 2017) .......................................................................... 2

*Judicial Watch, Inc. v. Dep't of State*,
285 F. Supp. 3d 249 (D.D.C. 2018) .......................................................................... 3

*Judicial Watch, Inc. v. Dep't of State*,
875 F. Supp. 2d 37 (D.D.C. 2012) .......................................................................... 13

*McGehee v. Dep't of Just.*,
800 F. Supp. 2d 220 (D.D.C. 2011) ........................................................................ 13

*Mead Data Central, Inc. v. Dep't of Air Force*,
566 F.2d 242 (D.C. Cir. 1977) ................................................................................ 10

*NARA v. Favish*,
    541 U.S. 157 (2004) ................................................................ 14

*Nat'l Sec. Archive v. CIA*,
    752 F.3d 460 (D.C. Cir. 2014) .................................................. 8, 9

*Nat'l Sec. Counselors v. CIA*,
    206 F. Supp. 3d 241 (D.D.C. 2016)........................................... 11-12

*Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*,
    903 F. Supp. 2d 59 (D.D.C. 2012) ............................................ 2, 3

*Nova Oculus Partners, LLC v. Sec. & Exch. Comm'n*,
    486 F. Supp. 3d 280 (D.D.C. 2020) .......................................... 2

*Performance Coal Co. v. Dep't of Labor*,
    847 F. Supp. 2d 6 (D.D.C. Mar. 7, 2012) ................................. 6

*Protect Democracy Project, Inc. v. Dep't of Def.*,
    320 F. Supp. 3d 162 (D.D.C. 2018) .......................................... 11

*Russell v. Dep't of Air Force*,
    682 F.2d 1045 (D. C. Cir. 1982) ............................................... 7, 9

*Sack v Dep't of Def.*,
    823 F.3d 687 (D.C. Cir. 2016) .................................................. 16

*Salas v. Office of Inspector Gen.*,
    577 F. Supp. 2d 105 (D.D.C. 2008) .......................................... 14

*Schwartz v. Internal Revenue Service*,
    511 F.2d 1303 (D.C. Cir. 1975) ................................................ 6

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
    141 S. Ct. 777 (2021) ............................................................... 7

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ................................................................ 8

*Wright v. Admin. for Children & Families*,
    Civ. A. No. 15-218 (BAH), 2016 WL 5922293 (D.D.C. Oct. 11, 2016) ............... 2

**STATUTES**

5 U.S.C. § 552 ................................................................................ 1, 8

19 U.S.C. § 1509 ................................................................................................ 2, 3, 5, 6, 7, 10, 13

19 U.S.C. § 1607 ................................................................................................................... 5

## INTRODUCTION

The United States Customs and Border Protection ("CBP") and the United States Department of Homeland Security ("the Department" or "DHS"), (collectively, "Defendants"), respectfully submit this reply in further support of their motion for summary judgment and in opposition to Plaintiff's cross-motion for summary judgment.  Defendants properly processed and applied exemptions under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  For the reasons set forth in their opening memorandum and the additional grounds discussed below, Defendants are entitled to summary judgment.  Defendants submit the Fifth Declaration of Patrick Howard ("Howard 5th Decl.") in further support of their motion for summary judgment.

Plaintiff contends that the "extent of Defendants' withholdings in the context of the FOIA requests at issue" is "troubling."  ECF No. 60-1, Pl's Opp'n at 2.  However, the extent of the redactions is unsurprising given that most of the records at issue consisted of the agency's discussions about how to respond to the Twitter lawsuit (including external inquiries about the lawsuit), the agency's examination of how it uses the summons authority at issue in the lawsuit (including drafts of a new policy on how to use that authority), and the agency's records about how it processed Plaintiff's FOIA requests.  *See* ECF No. 59-3, Fourth Declaration of Patrick Howard ("Howard 4th Decl.") ¶ 43; *see also* ECF No. 59-4, Updated *Vaughn* Index.  In other words, Plaintiff's requests are effectively for deliberative process records.

## ARGUMENT

## I.   FOIA EXEMPTION 5

CBP properly withheld information pursuant to the deliberative process privilege, and the attorney-client and work product privileges of FOIA Exemption 5.  The government-misconduct exception does not bar CBP from invoking the deliberative process privilege of FOIA Exemption 5 as the underlying documents at issue do not reflect government impropriety.  Moreover, CBP's

declarations and accompanying *Vaughn* Index sufficiently demonstrate that the records withheld pursuant to FOIA Exemption 5 are exempt from disclosure pursuant to the deliberative process privilege, the attorney-client privilege and the work product doctrine.

### A.   The government-misconduct exception does not bar CBP from invoking the deliberative process privilege.

Plaintiff contends that CBP "may not rely upon the deliberative process privilege of Exemption 5 to withhold records related to 'the issuance of the Twitter summons and the use of the 19 U.S.C. § 1509 summons authority' . . . because such withholdings are clearly impermissible under the government-misconduct exception."  ECF No. 60-1, Pl's Opp'n at 12.

The D.C. Circuit has not decided whether the government misconduct exception abrogates the deliberative process privilege in FOIA litigation, and the district courts who have addressed the issue are divided in their conclusion.  *See Nova Oculus Partners, LLC v. SEC*, 486 F. Supp. 3d 280, 292 (D.D.C. 2020) ("It is an open question whether the deliberative process privilege is subject to government misconduct exception in the FOIA context."); *compare Judicial Watch, Inc. v. Dep't of State*, 241 F. Supp. 3d 174, 183 (D.D.C. 2017) ("[T]he Court finds that the only applicable Circuit authority militates against recognizing a government misconduct exception in a FOIA case[.]"); *Wright v. Admin. for Children & Families*, Civ. A. No. 15-0218 (BAH), 2016 WL 5922293, at *11 (D.D.C. Oct. 11, 2016) ("This Court is not persuaded that the so-called 'government misconduct' exception suggested in *In Re Sealed Case* applies in the FOIA context."), *with Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 903 F. Supp. 2d 59, 67 (D.D.C. 2012) ("[T]he Court here finds that the government-misconduct exception may be invoked to overcome the deliberative-process privilege in a FOIA suit.").

Assuming, *arguendo*, that the government-misconduct exception applies in the context of FOIA, the exception would nonetheless not apply in the instant case.  Courts recognizing a

government misconduct exception to the deliberative process privilege have observed that a plaintiff must "meet a high bar to properly invoke" the exception. *Jud. Watch, Inc. v. Dep't of State,* 285 F. Supp. 3d 249, 254 (D.D.C. 2018). *See, e.g.*, *Hall & Assocs. v. EPA*, 14 F. Supp. 3d 1, 9 (D.D.C. 2014) ("While there is little case law to guide the Court on what quantum of evidence must be shown to support the [government misconduct] exception, courts have recognized the need to apply the exception narrowly[.]"); *Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.,* 903 F. Supp. 2d 59, 68 (D.D.C. 2012) (observing that only "extreme government wrongdoing" would prevent an agency from invoking the deliberative process privilege); *ICM Registry, LLC v. Dep't of Com.,* 538 F. Supp. 2d 130, 133 (D.D.C. 2008) ("In the rare cases that have actually applied the exception, the 'policy discussions' sought to be protected with the deliberative process privilege were so out of bounds that merely discussing them was evidence of a serious breach of the responsibilities of representative government," i.e., "[t]he very discussion . . . was an act of government misconduct[.]").

Plaintiff first cites to the DHS OIG report and its finding that § 1509 summons authority had regularly been used by CBP in violation of agency policy.  ECF No. 60-1, Pl's Opp'n at 13.  However, the DHS OIG report also concluded that the evidence "demonstrate[d] a lack of understanding of the proper use of DHS 3115 / Section 1509 Summonses on the part of CBP OPR personnel."  *See* Management Alert – *CBP's Use of Examination and Summons Authority Under 19 U.S.C. § 1509* (Nov. 16, 2017), https://www.oig.dhs.gov/sites/default/files/assets/2017-11/OIG-18-18-Nov17.pdf, at 5.

Plaintiff then identifies specific records within CBP's *Vaughn* Index and argues that these records "should be publicly released pursuant to the government misconduct exception."  ECF No. 60-1, Pl's Opp'n at 13.  Plaintiff must "provide an adequate basis for believing that [the material

withheld] would shed light upon government misconduct." *Jud. Watch, Inc. v. Dep't of State,* 235 F. Supp. 3d 310, 314 (D.D.C. 2017) (quoting *Nat'l Whistleblower,* 903 F. Supp. 2d at 67). "A document sheds light on misconduct when it 'reflects any governmental impropriety,' but not when it merely reflects a 'part of the legitimate government process intended to be protected by Exemption 5.'" *Judicial Watch, Inc.,* 235 F. Supp. 3d at 314 (quoting *Nat'l Whistleblower,* 903 F. Supp. 2d at 68).     None of the documents identified by Plaintiff reflect any governmental impropriety.  CBP FOIA 00434-00436 and CBP FOIA 00940-00943 contain a draft summary of the events that led to the issuance of the summons to Twitter, Inc.  Howard 5th Decl. ¶ 10.  CBP FOIA 01034-01038 pertain to what steps OPR would normally take in a cyber investigation.  *Id.* And finally, Plaintiff identified CBP FOIA 03131-03143, which consists of email communications from June 2017 between the Office of Chief Counsel ("OCC"), these communications took place after the CBP's issuance of the summons to Twitter and provide no suggestion of intentional nefarious conduct; nothing concerning the agency's deliberative process of reviewing its policy and issuing a new policy that in any way indicates a corrupt decision making process or misconduct of any kind.  *see* ECF No. 60-4, Second Townsend Decl. ¶ 2, Ex. A.

For these reasons, even if this Court deems that the government-misconduct applies in the context of FOIA, the government-misconduct narrow exception nonetheless does not apply here as the records identified by Plaintiff do not reflect any governmental impropriety.  Instead these records merely reflect a legitimate government process intended to be protected by FOIA Exemption 5.

### B.    Defendants have met their burden to demonstrate that the documents withheld pursuant to the deliberative process privilege are predecisional and deliberative.

Plaintiff argues that Defendants have failed to establish that the documents withheld pursuant to the deliberative process privilege are predecisional or deliberative.  ECF No. 60-1, Pl's

Opp'n at 14-18.  The records withheld pursuant to the deliberative process privilege pertain to "internal agency deliberation about the issuance of the Twitter summons and the use of the 19 U.S.C. § 1509 authority, how to respond to the Twitter lawsuit, how to respond to Congressional, Inspector General, and media requests in relation to the Twitter lawsuit, and what changes, if any, to make to existing agency policy and training, including drafts and discussions of the 19 U.S.C. § 1509 directive issued on December 13, 2018" and "communications between CBP attorneys and CBP employees about how to process Plaintiff's FOIA requests." ECF No. 59-3, Howard 4th Decl. ¶¶, 43, 45.  These records fall squarely within the deliberative process privilege.

Plaintiff first identifies CBP FOIA pages 00478-00506 and notes that Defendants "offer no explanation, whatsoever, as to how a memorandum from 1997 could be 'predecisional' or 'deliberative' as it pertains to CBP's 2017 issuance of a Section 1509 summons to Twitter."  ECF No. 60-1, Pl's Opp'n at 16.  CBP explains that the "1997 memo" is an attachment that was included in an email exchange between two CBP OCC attorneys on April 12, 2017.  Howard 5th Decl. ¶ 5. The email communication pertains to a supervisory attorney reviewing the draft legal analysis written by a junior attorney; the junior attorney was tasked with developing written legal advice for the Office of Professional Responsibility on the use of summons authority under 19 U.S.C. § 1509.  Howard 5th Decl. ¶ 6.  The attachment to the email communication contains edits and comments provided by one of the supervising attorneys to the junior attorney on the draft legal analysis using Microsoft Word track changes.  *Id.*  The "1997 memo" titled "Definition of Prohibited Merchandise under 19 U.S.C. § 1607(a)(2)" pertaining to CBP's seizure authorities of prohibited merchandise with a value of under $500,000 was attached to the April 12, 2017, email as research aid in order to help the junior attorney with drafting the legal analysis on the use of summons authority under 19 U.S.C. § 1509.  Howard 5th Decl. ¶ 7.

The second attachment to that email contains edits and comments provided by the supervisor to the junior attorney on the draft legal analysis on summons authority in track changes function of Microsoft Word.  *Id.*  These drafts from this CBP junior attorney, which contain edits and comments, do not reflect "policies, statements or interpretations of law that [CBP] has actually adopted."  *Schwartz v. IRS,* 511 F.2d 1303, 1305 (D.C. Cir. 1975).  Instead, these email exchanges and drafts are predecisional and deliberative, and therefore exempt from disclosure pursuant to the deliberative process privilege of FOIA Exemption 5.

With respect to briefing materials presented to senior leadership, Plaintiff argues that the likelihood this material has been relied upon or adopted as an official position after their preparation is particularly high.[1]  ECF No. 60-1, Pl's Opp'n at 16-17.  However, here CBP indicates that the email communications between CBP employees on how to respond to requests for information in relation to the Twitter lawsuit from the DHS Inspector General, Congress, and the media.  ECF No. 59-3, Howard 4th Decl. ¶ 48.  CBP indicates the communications contain drafts and preliminary versions of responses not yet approved for release, reflecting comments and deliberations by agency officials; thus, this information is both predecisional and deliberative.  *Id.* *See Performance Coal Co. v. Dep't of Labor*, 847 F. Supp. 2d 6, 15-16 (D.D.C. Mar. 7, 2012) (documents discussing how to respond to certain allegations made against agency were correctly withheld pursuant to the deliberative process privilege).

Plaintiff also argues that CBP "impermissibly withheld documents responsive to Plaintiff's Second FOIA request, including a 'document log created by a FOIA analyst' and 'discussions between CBP employees regarding the review process for records being released under FOIA.'"

---

[1]      The redactions to CBP FOIA 002674-002767 are discussed in the FOIA Exemption 7(E) section.

ECF No. 60-1, Pl's Opp'n at 17.  The FOIA log represents the FOIA analysts notes with respect to the processing of Plaintiff's requests.  Howard 5th Decl. ¶ 11.  This information is predecisional and deliberative as the FOIA analyst processes and prepares the release package which is ultimately reviewed and approved for release to Plaintiff by the Branch Chief of the FOIA Division.  *Id*.  "Such recommendations from subordinates to superiors lie at the core of the deliberative-process privilege."  *Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020).

Finally, Plaintiff contends that some of Defendants' drafts "may have lost their predecisional status due to their adoption by the agency.  ECF No. 60-1, Pl's Opp'n at 17.  "As a general matter, 'drafts' of documents are exempt from disclosure under the deliberative process privilege."  *Goodrich Corp. v. EPA*, 593 F. Supp. 2d 184, 189 (D.D.C. 2009) (citing *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1569 (D.C. Cir. 1987), and *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D. C. Cir. 1982)).  Documents that leave "agency decisionmakers 'free to change their minds,'" such as the drafts at issue here, do "not reflect the agency's final decision."  *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.,* 141 S. Ct. 777, 786 (2021).

Here, CBP confirmed that many of the records at issue are "drafts of the updated directive on the use of 19 U.S.C. § 1509 authority."  ECF No. 59-3, Howard 4th Decl. ¶¶ 45, 51.  These drafts include contextual recommendations, comments, and redline edits made by individuals from various CBP offices that convey the authors' opinions regarding the draft language.  *Id.* ¶ 51.  The markings contained on the face of these documents make clear that they were "preliminary version[s] of . . . piece[s] of writing subject to feedback and change."  *Sierra Club*, 141 S. Ct. at 786.  Moreover, as the D.C. Circuit has explained:

> [T]he writer [of a draft] does not know at the time of writing whether the draft will evolve into a final document.  But the writer needs to know at the time of writing

> that the privilege will apply and that the draft will remain confidential, in order for
> the writer to feel free to provide candid analysis.  A privilege contingent on later
> events—such as whether the draft ultimately evolved into a final agency position—
> would be an uncertain privilege, and as the Supreme Court has said, an uncertain
> privilege is "little better than no privilege at all."

*Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981)).  Thus, "the deliberative-process privilege should be judged based on the purpose of the document when it was created, not in hindsight," and "privilege over a predecisional document is 'waived' only when the agency publishes the document or expressly adopts the document's reasoning as its own."  *Am. Ctr. for Law & Justice v. Dep't of Just.*, 325 F. Supp. 3d 162, 174 (D.D.C. 2018) (citing *Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 10-12 (D.C. Cir. 2014)).  Thus, CBP correctly withheld these drafts pursuant to the deliberative process privilege of FOIA Exemption 5.

### C.     CBP complied with FOIA's foreseeable harm provision.

Pursuant to the foreseeable harm requirement of the FOIA Improvement Act of 2016 an agency shall withhold information only if it "reasonably foresees that disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law."  5 U.S.C. § 552(a)(8)(A)(i).  Plaintiff argues that CBP has only provided "generic assertions of harm sufficiently tethered to the myriad of different types of information withheld, and thus cannot satisfy the requirements of the foreseeable harm provision.  ECF No. 60-1, Pl's Opp'n at 19.

The deliberative process privilege "serves at least three policy purposes:" (1) it "protects creative debate and candid consideration of alternatives with an agency, and, thereby, improves the quality of agency policy decisions;" (2) "it protects the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon;" (3) "it protects the integrity of the decision-making process itself by

confirming that officials would be judged by what they decided, not for matters they considered before making up their minds." *Amadis v. Dep't of Just.,* 388 F. Supp. 3d 1, 18-19 (D.D.C. 2019). CBP indicates that the harm resulting from the release of these communications would have a chilling effect on open and frank discussions amongst its employees; and if such discussions were routinely released, employees would not seek guidance or share their views for fear of their communications being published.  ECF No. 59-3, Howard 4th Decl. ¶¶ 43, 46-49, 51-52.  CBP also indicates that the disclosure of drafts pertaining to agency guidance and policy which have not been adopted or finalized could lead to confusion.  *Id.* ¶ 51.

The premise of the deliberative process privilege is that if agencies were "to operate in a fishbowl, the frank exchange of ideas and opinions would cease, and the quality of administrative decisions would consequently suffer."  *Dudman,* 815 F.2d at 1567 (internal quotation marks and citation omitted).  In other words, agency officials "should be judged by what they decided, not for matters they considered before making up their minds."  *Russell,* 682 F.2d at 1048 (quotation omitted).  "[I]n order for a privilege to encourage frank and candid debate, the speaker or writer must have some strong assurance at the time of the communication that the communication will remain confidential."  *Nat'l Sec. Archive*, 752 F.3d at 464.  For these reasons, release of the documents at issue here, and withheld pursuant to the deliberative process privilege, would clearly harm interests protected by Exemption 5.

Plaintiff argues that it is illogical for CBP to claim that the discussions between agency employees "would be 'chilled' by disclosure" when CBP withholds the names of its non-public facing employees.  ECF No. 60-1, Pl's Opp'n at 21.  Although CBP has withheld the names of its non-public facing employees, CBP has released the title, position, and office of its employees.

Howard 5th Decl. ¶ 14.  In other words, if released, this information could be traced to specific offices and individuals.

### D.      CBP correctly applied the attorney-client and work product privileges

CBP withheld confidential communications between DHS and CBP attorneys, and between CBP attorneys and CBP employees about the Twitter lawsuit and the agency's use of the 19 U.S.C. § 1509 summons authority, including drafts of the 19 U.S.C. § 1509 directive.  ECF No. 59-3, Howard 4th Decl. ¶¶ 44, 50, 52; Ex. A Updated *Vaughn* Index.  These emails cover instances where CBP employees are seeking legal advice from CBP attorneys about the scope of 19 U.S.C. § 1509 and the proper interpretation of the statute.  *Id.* ¶ 50; Ex. A.  Some of these emails also cover communications between CBP attorneys and CBP employees seeking advice on how to process Plaintiff's FOIA requests and application of proposed exemptions to the responsive records at issue.  *Id.* ¶ 52; Ex. A.  The information withheld here is the type of information that the attorney-client privilege of FOIA Exemption 5 was intended to protect because the information constitutes "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc. v. Dep't of Air Force,* 566 F.2d 242, 252 (D.C. Cir. 1977); *see also Jud. Watch v. Dep't of Army,* 466 F. Supp. 2d 112, 121 (D.D.C. 2006) (Attorney-client privilege "encompasses any opinions given by an attorney to his client based on, and thus reflecting, those facts as well as communications between attorneys that reflect client-supplied information.").

Plaintiff contends that CBP incorrectly applied the attorney-client privilege on CBP FOIA 000040-000045 as "advice to the client regarding how to respond to a media request." ECF No. 60-1, Pl's Opp'n at 25.  CBP notes that with respect to CBP FOIA 000040-000045 it applied both the attorney-client and work product privilege to portions of an email which contain legal analysis

from the Office of Chief Counsel regarding the complaint issued by Twitter and how to proceed with the litigation.  ECF No 59-4, Ex. A Updated *Vaughn* Index.

Plaintiff also contends that CBP incorrectly applied the attorney-client privilege on CBP FOIA 000343-000349 as "advice to the client regarding how to respond to a media request."  ECF No. 60-1, Pl's Opp'n at 25.  However, with respect to CBP FOIA 000343-000349, CBP correctly applied the deliberative process privilege to the draft response to a senate inquiry.  ECF No. 59-4, Ex. A Updated *Vaughn* Index.  *See Protect Democracy Project, Inc. v. Dep't of Def.,* 320 F. Supp. 3d 162, 177 (D.D.C. 2018) (concluding that talking points "qualify as predecisional and deliberative" because "[r]evealing their contents would expose the process by which agency officials crafted a strategy for responding to the press and to Congress"); *Judicial Watch, Inc. v. Dep't of Homeland Sec.,* 736 F. Supp. 2d 202, 208 (D.D.C. 2010) (deliberative process privilege covers agency emails involving recommendations and evaluations for how to respond to Congressional requests for information).

Plaintiff further argues that CBP incorrectly withheld portions of training materials pursuant to the attorney-client and work product privileges.  ECF No. 60-1, Pl's Opp'n at 25. However, CBP applied attorney-client privilege to information providing professional advice to agency client through email communications and training.  ECF No. 59-3, Howard 4th Decl. ¶ 44. These communications were between DHS and CBP attorneys and CBP attorneys and CBP employees.  *Id.*  The information withheld includes internal legal guidance to agency clients.  ECF No. 59-4, Ex. A Updated *Vaughn* Index.  Legal advice provided by CBP attorneys to agency clients is correctly withheld pursuant to the attorney-client privilege.  *See e.g. Nat'l Sec. Counselors v. CIA*, 206 F. Supp. 3d 241, 285-86 (D.D.C. 2016) (legal advice provided by CIA attorney to client and then memorialized by client in database and legal advice provided by CIA OGC attorneys to

assist in preparation of training materials were properly withheld under attorney-client privilege); *Families for Freedom v. U.S. Custom & Border Prot.,* 797 F. Supp. 2d 375, 395-96 (S.D.N.Y. 2011) (finding that training memoranda "fall squarely within the attorney client privilege").

Finally, Plaintiff refers to information being incorrectly withheld from CBP FOIA 01453-01455 because it pertains to an exchange between "CBP's Office of Professional Responsibility and counsel for a third party (here, Twitter). ECF No. 60-1, Pl's Opp'n at 26. CBP notes that there was a mistake in the *Vaughn* Index, this email exchange is an internal agency communication and does not involve a party outside of the agency or a private party. Howard 5th Decl.¶ 18.

## II.   CBP PROPERLY WITHHELD PURSUANT TO FOIA EXEMPTIONS 6 AND 7(C) THE NAMES OF IT'S NON-PUBLIC FACING EMPLOYEES

CBP applied FOIA Exemptions 6 and 7(C) to withhold the names of its non-public facing CBP employees.[2] ECF No 59-3, Howard 4th Decl. ¶¶ 53-54. CBP did, however, release the title, position, and the office of the non-public facing CBP employees. Howard 5th Decl. ¶ 14. CBP also released the names of senior officials whose identities are widely known among the public. *Id* ¶ 12. The identification of non-public facing CBP employees in association with the performance of duties in an operational context risks the unwarranted attribution and attention to the employee beyond the confines of their job and into their personal life, and disclosing the identities of specific individuals would not meaningfully shed light on how the government performs its duties. ECF No. 59-3, Howard 4th Decl. ¶¶ 55-56. CBP employees have a heightened privacy interest in that they have been subject to harassment, discrimination, and received threats of physical harm solely because of their employment at CBP. *Id.* ¶ 56. Disclosing identifying information of non-public facing CBP employees unnecessarily risks exposing these individuals

---

[2]   Plaintiff does not challenge the redactions of individuals' email addresses or phone numbers made pursuant to FOIA Exemptions 6 and 7(C). ECF No. 60-1, Pl's Opp'n at 28 n. 6.

to such harms, and the courts have recognized a privacy interest in such instances.  *See, e.g., Jud. Watch, Inc. v. Dep't of State,* 875 F. Supp. 2d 37, 47 (D.D.C. 2012) (recognizing "the risk of media harassment and undesired contact"); *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.,* 384 F. Supp. 2d 100, 116 (D.D.C. 2005) (noting threat to privacy of DHS personnel derived from nature of their employment by an agency that "advocates for security measure that may be unpopular").[3]

Contrary to Plaintiff's assertion, the balancing analysis of the CBP employees' privacy interest in the non-disclosure of their identifying information against the public interest, favors withholding this information.   *See, e.g., McGehee v. Dep't of Just.,* 800 F. Supp. 2d 220, 234 (D.D.C. 2011) ("[T]he relevant question is not whether the public would like to know the names of FBI agents and victims involved, but whether knowing those names would shed light on the FBI's performance of its statutory duties.").  As mentioned in CBP's opening brief, the actual 1509 summons at issue (and the name of the CBP agent who signed it) has been released without redaction.  *See, e.g.,* ECF No. 59-4, Ex. A, *Vaughn* Index, CBP FOIA 000029-000032. Furthermore, the circumstances surrounding the Twitter summons are the subject of the publicly available DHS OIG report. *See Management Alert – CBP's Use of Examination and Summons Authority Under 19 U.S.C. § 1509,* OIG-18-18, November 16, 2017, available at: https://www.oig.dhs.gov/sites/default/files/assets/Mga/2017/oig-18-18-nov17.pdf.    Thus,   the disclosure of the personal identifying information of these non-public facing CBP employees would not shed additional light on CBP's operations.

---

[3]       Plaintiff indicates that Defendant refers to three incidents that occurred nearly two years ago and Plaintiff further indicates that it could find no publicly support for these claims.  ECF No. 60-1, Pl's Opp'n at 29.  The following illustrates more recent events involving CBP employees: https://www.newsweek.com/cbp-chief-says-feds-dont-wear-name-badges-due-doxing-1519994

Plaintiff has also failed to satisfy its burden of establishing that disclosure of the withheld names would serve a FOIA public interest. *See, e.g., Salas v. Off. of Inspector Gen.*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008) ("It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant."). As the Supreme Court has explained, there must be a "nexus between the requested information and the asserted public interest that would be advanced by disclosure." *NARA v. Favish*, 541 U.S. 157, 172-73 (2004). No such nexus exists here. Plaintiff argues that its requests "concern matters of significant public concern: CBP's improper efforts to employ its administrative summons authority to compel a social media company to unmask the authors of an anonymous account publishing First Amendment-protected criticism of the government, as well as how CBP responded to challenges to that authority." ECF No. 60-1, Pl's Opp'n at 31. However, there is little, if any, connection between the stated public interest and the names of these non-public facing employees. On balance, these employees' privacy interests overwhelmingly outweigh any public interest in the release of their names. Accordingly, CBP correctly invoked FOIA Exemptions 6 and 7(C) to withhold the names of the non-public facing CBP employees.[4]

## III.    CBP PROPERLY APPLIED FOIA EXEMPTION 7(E) TO WITHHOLD TO WITHOLD LAW ENFORCEMENT TECHNIQUES AND PROCEDURES

---

[4]    Plaintiff indicates that "[b]ecause Defendants have not – and cannot – demonstrate that the withheld names are exempt under Exemption 6 and 7(C), they should be released, and the Court need not address the agency's failure to comply with the foreseeable harm provision." ECF No. 60-1, Pl's Opp'n at 31. However, CBP notes that the foreseeable-harm requirement of the FOIA Improvement Act of 2016 that Plaintiffs raise with respect to CBP's redactions under FOIA Exemption 7(C) and 7(E), has been mostly applied in the context of FOIA Exemption 5 and the deliberative-process privilege. *Citizens for Responsibility & Ethics in Wash. v. Dep't of Homeland Sec.*, Civ. A No. 20-1400 (CRC), 2021 WL 950415, at *6 n.4 (D.D.C. Mar. 12, 2021) ("Unlike Exemption 5, the statutory text of Exemption 7 predating the FOIA Improvement Act already contained an explicit requirement that the agency show a reasonable nexus between the withheld information and a predicted harm.").

CBP withheld the following information pursuant to FOIA Exemption 7(E): "(1) law enforcement techniques and procedures that CBP uses to investigate unauthorized disclosure of information and cybersecurity threats, (2) law enforcement techniques and procedures CBP uses to conduct internal investigations, (3) agency records reflecting the use or non-use of particular administrative summons authority, and (4) internal agency codes, databases, drives, group email addresses, CBP URL addresses, links, folder locations, file names, fax numbers, document identification numbers and reference codes." ECF No. 59-3, Howard 4th Decl. ¶ 58.[5]

Plaintiff specifically challenges the withholding of information pursuant to FOIA Exemption 7(E) on CBP FOIA 001291-001311. ECF No. 60-1, Pl's Opp'n at 33. CBP explains that the information withheld with respect to CBP FOIA 001291-001311 contains summaries put together at the end of each shift providing progress for each ongoing investigation related to breaches of CBP systems to the employees taking over for the next shift. Howard 5th Decl. ¶ 15. The emails include detailed progress summaries of CBP's cybersecurity investigations that were ongoing at the time, including the investigation into whether @ALT_USCIS account was releasing CBP's internal communications, as well as information related to other cybersecurity investigations. *Id.* The emails detail the steps CBP takes to determine whether a cybersecurity breach has occurred, which CBP offices are contacted and in what order, and how relevant information is gathered. *Id.* Plaintiff also challenged the withholding of information contained on CBP FOIA 01034-01038. ECF No. 60-1, Pl's Opp'n at 34. CBP indicates that the information

---

[5]     Plaintiff does not challenge CBP's of category (4) information – internal agency codes; databases; drives; group email addresses; CBP URL addresses; links; folder locations; files names; fax numbers; document identification numbers and reference codes. ECF No. 60-1, Pl's Opp'n at 33 n. 9. Plaintiff also does not challenge the Exemption 7(E) withholdings related to "polygraph examination procedures, grand jury information, immigration paroles and benefits" on CBP FOIA 001444-001473. *Id.*

withheld here pertains to the steps that OPR would normally take in a cyber investigation.  Howard 5th Decl. ¶ 16.  Plaintiff challenges the withholding of information contained on CBP FOIA 002674-002767, arguing that "CBP's administrative summons authority – if it can even be described as a law enforcement 'technique'- is most certainly well known."  ECF No. 60-1, Pl's Opp'n at 36.  In fact, CBP FOIA 002674-002767 contains a chart developed by OPR agents at the request of Office of the Chief Counsel attorneys detailing summonses issued during the preceding five years.  Howard 5th Decl. ¶ 17.  CBP applied Exemption 7(E) to the chart because it contains detailed information on each ongoing, or closed OPR investigation, whether summons was issued, and what information was requested.  *Id.*  Disclosure of this information would reveal sensitive law enforcement techniques, including at what point in an investigation, law enforcement agents would utilize certain investigative techniques, including administrative summonses.  *Id.*

CBP has indicated that the information withheld provides a play-by-play guide to potential bad actors into CBP's cybersecurity investigation techniques and procedures which, if disclosed could diminish CBP's cybersecurity and counterintelligence efforts.  Howard 5th Decl. ¶¶ 15-16.  Plaintiff's challenges to CBP's Exemption 7(E) withholdings discount that it is not improper to withhold information pertaining to known law enforcement techniques and procedures if the disclosure of such information could limit or nullify the effectiveness of the technique or procedure.  *See, e.g. Sack v Dep't of Def.*, 823 F.3d 687, 694-95 (D.C. Cir. 2016) (release of reports concerning polygraphs could undermine effectiveness of such examination); *Jud. Watch, Inc. v. Dep't of Com.*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004) ("[E]ven commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness.").

Plaintiff finally challenges the 7(E) redactions on CBP FOIA 00312-00313 and CBP FOIA 00718-00722.  ECF No. 60-1, Pl's Opp'n at 37.  CBP notes that it is releasing in full CBP FOIA

00718-00722 and lifting the redactions made pursuant to FOIA Exemption 7(E) on CBP FOIA

00312-00313.   Howard 5th Decl. ¶¶ 19-20, Ex. A.  Thus, those challenges are now moot.


\*   \*   \*

## CONCLUSION

For these reasons, Defendants respectfully request that the Court grant summary judgment

in their favor and deny Plaintiff's cross-motion for summary judgment.


Dated: May 11, 2021                      Respectfully submitted,

                                         CHANNING D. PHILLIPS
                                         D.C. Bar #415793
                                         Acting United States Attorney

                                         BRIAN P. HUDAK
                                         Acting Chief, Civil Division


                                         By:  /s/ *Kathleene Molen*
                                         KATHLEENE MOLEN
                                         VA Bar #68460
                                         Assistant United States Attorney
                                         555 4th Street, N.W.
                                         Washington, District of Columbia 20530
                                         (202) 803-1572
                                         Kathleene.Molen@usdoj.gov


                                         *Counsel for Defendants*